**Thomas L. PENN**

v.

**R. M. OLIVER, Superintendent of the Virginia State Penitentiary.**

**Civ. A. No. 564–72–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 26, 1972.

Thomas L. Penn, pro se.

William A. Carter, III, Asst. Atty. Gen. of Virginia, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Thomas Lee Penn, the plaintiff, is an inmate at the Virginia State Farm and brings this action pursuant to 42 U.S.C. § 1983, challenging the constitutionality of the conditions of his imprisonment. Jurisdiction is attained by virtue of 28 U.S.C. § 1343. The defendant has moved for summary judgment, plaintiff has responded, and the matter is now ready for disposition.

The circumstances underlying this complaint concern a serious altercation between Penn and another inmate by the name of George Huff. It appears that on June 11, 1971, an attempt was made on Penn's life by one Wiley A. Reynolds. One of Reynolds' friends, who was tangentially involved in this fight, was Huff. As a result of this incident, Huff was placed on maximum security status at the State Farm and apparently remained there until October 26, 1972.

On August 31, 1971, Penn wrote to the defendant, Oliver, Superintendent of the State Farm, and expressed his fear of Reynolds and Huff. Oliver responded, advising Penn that this conflict between him and Huff would be carefully considered prior to any decision on Huff's status. However, Oliver candidly admits that over a year later, when Huff was released from maximum security status, he had forgotten about this letter and did not bring it to the attention of the Institutional Classification Committee (I.C.C.). No other attempt was made by Penn to notify the authorities of his concern. The affidavit of E. C. Morris,

Chairman of the I.C.C. before which Huff appeared, reveals that Huff was asked if he anticipated any problems with other inmates if he were released to the general population; Huff responded in the negative. Although Oliver signed Huff's release, he played no active part in the I.C.C.'s decision.

Five days after Huff's release into general population, on November 1, 1972, a fight between Huff and Penn occurred. The record reveals a conflict of opinion as to the facts surrounding the fight. Penn claims that he was assaulted by Huff, but the official state police investigation found Penn to have been the aggressor.

Following the incident, Huff was returned by the I.C.C. to maximum security status. Penn, on the other hand, was incarcerated in the Powhatan-Goochland County Jail located on the State Farm, pending a final investigation of the incident. Another reason for his incarceration in the jail was the fact that Huff had been transferred back to the maximum security building, and the prison authorities undoubtedly desired to separate the two.

By this suit, plaintiff both attacks his transfer into the county jail and charges that the defendant failed to provide adequate security to protect him from Huff's attack. For the reasons stated below, the Court concludes that neither claim has merit.

This Court has no doubt that the eighth amendment's prohibition against cruel and unusual punishment places a responsibility upon prison officials to protect the person of inmates within the prison system from violent assaults by other inmates. Both actual assaults by other inmates and the constant fear of such assaults add immeasurably to the burden that must be borne by inmates. If security in a prison reaches such a degree of laxness that such assaults become the rule rather than the exception, then conditions have developed that are intolerable to accepted notions of decency. In short, there exists a constitutional right of inmates to be afforded at least some degree of protection from attacks by fellow inmates. See Holt v. Sarver, 309 F.Supp. 362 (E.D.Ark.1970), aff'd. 442 F.2d 304 (8th Cir. 1971); Note, Decency and Fairness: An Emerging Judicial Role in Prison Reform, 57 Va.L.Rev. 841, 858 (1971).

In determining whether a given act or omission by prison authorities rises to the level of deprivation of the right to security, the Court takes notice of the violent nature of the men who inhabit the Virginia prisons. It would be fantasy to believe that even the most enlightened prison officials operating with unlimited resources could prevent all acts of violence within the prison. Moreover, even if a prison official fails through his negligence to prevent an act of violence, a violation of constitutional right is not of necessity stated. To the contrary, there must be a showing either of a pattern of indisputed and unchecked violence or, on a different level, of an egregious failure to provide security to a particular inmate, before a deprivation of constitutional right is stated. An isolated act or omission by a prison official that allows an attack to occur and which involves only simple negligence does not, absent special circumstances, create a constitutional deprivation over which this Court has jurisdiction. Without an independent basis of jurisdiction, the Court cannot hear such a claim.

Applying these principles to the case before it, the Court concludes that Penn has not been deprived of his right to personal security. Even if the approval by Oliver of Huff's release from maximum security after having been informed by Penn of the conflict between the two were negligence, which conclusion the Court doubts, this act did not amount to a constitutional deprivation. Accordingly, Penn may not prevail on this claim.

Penn's second claim involves his incarceration in the county jail. The record reveals adequate facts to support the I.C.C.'s conclusion that Penn was

dangerous and should be detained pending investigation. Since this decision was not arbitrary or capricious, and since no potential violations of procedural due process appear, there is no violation of constitutional right stated.

An order in accordance with this memorandum shall issue.