Vance VAN HORN

v.

W. L. LUKHARD et al.

Civ. A. No. 75–0064–R.

United States District Court,
E. D. Virginia,
Richmond Division.

April 8, 1975.

Thomas M. Ammons, III, Virginia Beach, Va., for plaintiff.

Burnett Miller, Asst. Atty. Gen., Joseph B. Benedetti, Robert L. Harris, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a former Virginia prisoner, brings this civil rights action seeking monetary damages from certain present and former prison officials, and certain inmates, in order to redress alleged injuries of a constitutional dimension suffered while incarcerated in the Virginia State Penitentiary. At the time that the injuries allegedly occurred, defendant W. L. Lukhard was Director of the Department of Welfare and Institutions [DWI] of the Commonwealth of Virginia; defendant James Howard was Director of the Division of Corrections, DWI; defendant Slayton was Superintendent of the Virginia State Penitentiary; and defendants Richardson, Librom, Hardy, Brown, McKee, Tedder, Payne and White were inmates of the penitentiary. This action arises under 42 U.S.C. § 1983 and jurisdiction is conferred by 28 U.S.C. § 1343. This matter comes before the Court on the motion of defendants Lukhard, Howard and Slayton to dismiss for lack of jurisdiction over the subject matter, for failure to state a claim, and because the action is barred by the statute of limitations.

## I. STATEMENT OF FACTS

The plaintiff has alleged the following "facts" which the Court deems to be true for purposes of disposition of this motion. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). On May 21, 1973, plaintiff was sentenced by the Circuit Court for the City of Norfolk to serve two years in the Virginia State Penitentiary. On May 29, 1973, the plaintiff arrived at the State Penitentiary and was placed in the receiving dormitory. At a little before midnight, plaintiff was attacked in the receiving dormitory by a group of 10–15 inmates, among whom were the named defendant inmates, who repeatedly raped him and then forced him to commit sodomy and other unnatural sex acts over a period of one to two hours. Plaintiff alleges that prison guards and officials stationed nearby made no effort to rescue him despite his cries for help and the general uproar in the receiving dormitory. Defendant also charges that the named prison officials either negligently or intentionally failed to take proper precautions and provide proper safeguards for the safety and protection of new inmates in the receiving dormitory. Plaintiff finally charges that he suffered grave psychological and physical injury as a result of the sexual attacks perpetrated upon him in the receiving dormitory during the first night of his incarceration and seeks damages in the sum of $1,000,000 to redress this alleged constitutional injury.

## II. DEFENDANTS' MOTIONS TO DISMISS

### A. Jurisdiction Over This Action

In order to state a cause of action under 42 U.S.C. § 1983, plaintiff must satisfy two prerequisites. First, he must allege that the defendants have deprived him of a right secured by "the Constitution and laws" of the United States. Second, he must further allege that the defendants acted under "color of state law" in infringing his constitutionally protected right. Adickes v. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Canty v. City of Richmond Police Department, 383 F. Supp. 1396, 1399 (E.D.Va.1974).

Construing plaintiff's complaint broadly, as indeed it is required to do in civil rights actions,[1] Burris v. State Department of Public Welfare of South Carolina, 491 F.2d 762, 763 (4th Cir. 1974); Canty v. City of Richmond Police Department, *supra*, 383 F.Supp.

---

1. The principle of liberal construction of a civil rights complaint applies even where, as is the case here, the civil rights plaintiff is represented by counsel. See Burris v. State Dept. of Public Welfare of South Carolina, 491 F.2d 762, 763 (4th Cir. 1974).

1396 (E.D.Va.1974), the Court reads the plaintiff's complaint as alleging that the three state defendants through their gross negligence or intentional failure to properly supervise guards and prisoners at the State Penitentiary deprived him of reasonable and adequate protection from actual violence and sexual assault by fellow inmates, and concludes that plaintiff has stated a claim upon which relief can be granted. Inmates have a right, secured by the Eighth and Fourteenth Amendments, to reasonable protection from acts of violence and sexual assault perpetrated by fellow inmates. Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973); Penn v. Oliver, 351 F. Supp. 1292, 1294 (E.D.Va.1971); Holt v. Sarver, 309 F.Supp. 362, 373 (E.D. Ark.1970), aff'd 442 F.2d 304 (8th Cir. 1971). Prison officials have a correlative duty to exercise "reasonable care to prevent prisoners from intentionally harming others or from creating an unreasonable risk of harm." Woodhous v. Commonwealth, *supra*, 487 F.2d at 890.

■■ The Court is mindful that an isolated attack by one prisoner upon another does not constitute cruel and unusual punishment and that an isolated act or omission by a prison official which allows an attack to occur is not constitutionally actionable. Penn v. Oliver, *supra*, 351 F.Supp. at 1294. On the other hand, when continuing acts or omissions by prison officials have the effect of producing a pattern of violence and such a lessened degree of security that "assaults become the rule rather than the exception, then conditions have developed that are intolerable to accepted notions of decency." *Id.*

■ The Court finds the factual allegations described herein particularly disturbing because the alleged sexual assaults took place in the receiving dormitory during the first day of the plaintiff's incarceration. Prison officials may have a greater duty to provide new inmates adequate protection during their transition from civilian life to incarceration because new inmates will often be unfamiliar with the realities of prison life and will, therefore, be less adept at avoiding situations which could lead to sexual assault, and in defending against such assaults. Furthermore, subjection to gang rape and sodomy during the first day of incarceration hardly sets an appropriate prelude for ultimate rehabilitation. Consequently, the Court views the allegations in plaintiff's complaint as of such a serious and shocking nature as to state a violation of the Eighth and Fourteenth Amendments.

■ Furthermore, plaintiff has satisfied the second prong of the test for Civil Rights Act jurisdiction because defendants were state officials at the time that the alleged claim arose and were, therefore, acting "under color of state law." Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Accordingly, the Court has jurisdiction over the subject matter of this dispute and the persons of these three defendants.

Plaintiff has alleged a sufficient nexus between the acts or omissions of these defendants and the unconstitutional conduct leading to his injury to establish liability should he be able to prove the facts alleged. Since the Court at this stage of the litigation is not, nor could it on the present state of the record be expected to be, convinced beyond a doubt that the plaintiff cannot prove his claim, the motions to dismiss proffered by these three defendants must be denied.

B. The Statute of Limitations Issue

Plaintiff suffered his alleged constitutional injuries on May 29, 1973, and filed this lawsuit on January 28, 1975. Defendants now contend that this action is barred by the one year statute of limitations which Virginia has enacted to govern the timely assertion of § 1983 claims, § 8–24 of the Code of Virginia (1950), as amended, which reads in pertinent part:

Notwithstanding any other provision of law to the contrary, every action brought pursuant to the Civil Rights

Act of 1871, 42 U.S.C. § 1983, shall be brought within one year next after the right to bring the same shall have accrued.

The Court concludes to the contrary for reasons that follow, however, that § 8–24 of the Code of Virginia, insofar as it is intended to apply, is unconstitutional because it substantially burdens the assertion of paramount federal rights in a federal court and unreasonably discriminates against the maintenance of § 1983 "constitutional tort" actions, such as the one before the Court. Accordingly, defendants' motion to dismiss this action because barred by the statute of limitations shall be denied.

1. Background

The immediate controversy is before the Court because Congress did not see fit to enact a limitations period for civil rights actions brought under 42 U.S.C. § 1983. When the Fourth Circuit had occasion to consider the problem of the appropriate limitations periods for § 1983 actions, it held in Almond v. Kent, 459 F.2d 200, 204 (4th Cir. 1972), a case which arose in the Western District of Virginia, that since a § 1983 action was analogous to a state tort "personal injury" action, Virginia's two year "personal injury" statute of limitations governed the maintenance of § 1983 actions brought in Virginia federal courts. The rule of Almond v. Kent is that District Courts should look to the law of the state where the District Court is sitting for appropriate guidance in fashioning a statute of limitations for § 1983 actions.

The Fourth Circuit suggested, however, in a footnote to Almond v. Kent, that the Commonwealth of Virginia might well consider enacting a specific statute· of limitations of § 1983 actions "[b]ecause of the rising tide of § 1983 suits against state officials and the difficulty of applying a statute enacted primarily to deal with different types of litigation." Id. at 203 n.3. The Court of Appeals did not proffer this suggestion, however, without providing guidance as to what it would consider the permissible parameters of a state enacted limitations period. First, the Court quoted from Mr. Justice Harlan's concurrence in Monroe v.. Pape, 365 U.S. 167, 196, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), by way of indicating that it considered the "constitutional tort" made actionable by § 1983 "more serious than a violation of a state right . . . even though the same act may constitute both a state tort and the deprivation of a constitutional right." Almond v. Kent, supra, 459 F.2d 200, at 204.

Second, the Court opined that the § 1983 action "more properly belong[ed] at the two year step in Virginia's statute of limitations scale of values." Id. The constitutional tort was more important, the Fourth Circuit specifically stated, than the transitory torts for which Virginia prescribes a one year statute of limitations. In sum, although the Court of Appeals suggested that Virginia might, if she wished, enact an appropriate statute of limitations for § 1983 actions, it pointedly noted that it considered the "constitutional tort" to be a much more important right of action in the scheme of things than the transitory and personal injury torts for which Virginia had enacted one and two year statute of limitations respectively. Nevertheless, in accepting the Fourth Circuit's invitation to fashion a limitations period for § 1983 actions, the Virginia legislature has enacted a one year statute which falls clearly outside the parameters of permissibility that were drawn by that Court.

2. The Governing Limitations Period

Congress, when creating a federal right or a federal cause of action within the province of the federal courts, very rarely appends exhaustive definitions for all the legal terms relating to the right or cause of action, and very frequently sees fit not to spell out all the remedial details embraced by the federal right. In such cases, the federal courts for reasons of economy and federalism will often refer to the great corpus of

state law to supply common meanings to terms of legal significance used in federal statutes, RFC v. Beaver County, 328 U.S. 204, 210, 66 S.Ct. 992, 90 L.Ed. 1172 (1946); De Sylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 100 L. Ed. 1415 (1956), or to fashion "remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles." Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946); cf. Chevron Oil Co. v. Huson, 404 U.S. 97, 103, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). One such "remedial detail" which Congress often sees fit not to spell out is an applicable limitations period to govern the assertion of congressionally created rights of action. Where Congress has been silent about the applicable statute of limitations, that question is, nevertheless, a matter of federal law. UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 700–01, 705, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); see Textile Workers Union v. Lincoln Mills, 353 U. S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). As a rule, the federal courts have interpreted "the silence of Congress . . . to mean that it is federal policy to adopt the local law of limitation." Holmberg v. Armbrecht, supra, 327 U.S. at 395, 66 S.Ct. at 584; Chevron Oil Co. v. Huson, supra, 404 U.S. at 104, 92 S.Ct. 349.

 There is, however, an important qualification to the familiar rule that "state statutes of limitation govern the timeliness of federal causes of action unless Congress has specifically provided otherwise," UAW v. Hoosier Cardinal Corp., supra, 383 U.S. at 703–04, 86 S. Ct. at 1112. A federal court may in the exercise of its Article III power properly disregard a state statute of limitations purporting to govern the timeliness of a federally created right that is so unusually short that it burdens the assertion of the federal right, Campbell v. Haverhill, 155 U.S. 610, 615, 15 S.Ct. 217, 39 L.Ed. 280 (1895); See UAW v. Hoosier Cardinal Corp., supra, 383 U.S.

at 707 n. 9, 86 S.Ct. 1107; cf. RFC v. Beaver County, supra, 328 U.S. 204, 210, 66 S.Ct. 992, 90 L.Ed. 1172 (1946); Moon Ho Kim v. United States, 514 F.2d 179 (D.C.Cir., 1975), or when it discriminates against the federal cause of action, such as the § 1983 "constitutional tort," by applying a substantially shorter limitations period than that supplied by state law for an analogous state created cause of action. Campbell v. Haverhill, supra; Rockton & Rion Ry. v. Davis, 159 F.2d 291 (4th Cir. 1946); Caldwell v. Alabama Dry Dock & Shipbuilding, 161 F.2d 83 (5th Cir. 1947).

 The Court concludes that § 8–24 of the Code of Virginia is unconstitutional because it both burdens the assertion of a federally created right of substantial importance and because it effects an invidious and unwarranted discrimination against assertion of the "constitutional tort."

a. The "Burden" Argument

In order to determine whether the assertion of a federally created right in a federal court is impermissibly burdened by the application of an unduly short state created limitations period, the Court must first assess the relative importance of the policies underlying the federally created right. The Court here deals with § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. The Civil Rights Act of 1871 was one of the means whereby Congress sought to enforce the provisions of the then recently enacted Fourteenth Amendment. Monroe v. Pape, 365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Congress meant to provide the victims of constitutional deprivation a "constitutional tort remedy" where the state tort remedy, although available in theory, was not available in practice. Id. at 174, 81 S. Ct. 473. "[Section 1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Id. at 187, 81 S.Ct. at 484. Congress determined that a violation of constitutional right was more serious than a viola-

tion of a state right and, therefore, deserved another remedy. *Id.* at 196, 81 S.Ct. 473 (Harlan, J., concurring).

The tone of the Act, as described by Mr. Justice Harlan, is "one of overflowing protection of constitutional rights." *Id.* at 196, 81 S.Ct. at 489. Our own Circuit has recognized that § 1983 was designed as a comprehensive, remedial legislation for the redress of federal constitutional deprivations. Smith v. Hampton Training School for Nurses, 360 F.2d 577, 581 (4th Cir. 1966) (Sobeloff, J.). The Supreme Court has emphasized again and again that the Reconstruction Era civil rights statutes must be accorded "a sweep as broad as [their language]." United States v. Price, 383 U.S. 787, 801, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 437, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Griffin v. Breckenridge, 403 U.S. 88, 97, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Furthermore, the Court has consistently refused to allow the policies underlying § 1983 "to be shriveled by technicalities drawn from private law doctrines or to be emasculated by unnatural, artificial interpretations." Green v. Dumke, 480 F.2d 624, 628 (9th Cir. 1973) (Hufstedler, J.).

Given the policies which underly the Civil Rights Act of 1871, the Court concludes that Virginia's one year § 1983 statute of limitations impermissibly "emasculates" and "shrivels" the broad, comprehensive and remedial protections envisioned by that Act. Requiring civil rights plaintiffs to assert their claims within one year, or else lose all prospect of vindication, defeats and vitiates the congressional purpose in enacting a right of action which has been variously described as comprehensive, remedial, overflowing, broad sweeping, expansive, and more important than corresponding state tort rights of action. One must keep in mind that this statute protects such paramount federal rights as the right to vote, the right of free speech, and the right to be free from invidious discrimination—rights which may only be overborne by the state, if at all, upon a showing of compelling state interest —and that Congress enacted § 1983 because it felt that certain classes of people, racial minorities, the economically underprivileged, and the politically impotent were in dire need of the protection of the federal law. Virginia's one year limitation period simply provides an irrational and constitutionally inappropriate measure of the importance of the assertion of these rights and, therefore, must fall because in irreconciliable conflict with the supremacy clause, Article VI of the Constitution of the United States.

b. The Discrimination Argument

Although the discrimination argument is often confused with the "burden" argument, it still maintains a distinct conceptual existence. For example, even though a state enacted statute of limitations for a federally created right might not be so unduly short as to unreasonably burden the assertion of the federal right, the state statute might, nevertheless, effect a discrimination against the assertion of the federal right in contradistinction to the assertion of analogous state created rights.

In Caldwell v. Alabama Dry Dock & Shipbuilding, 161 F.2d 83 (5th Cir. 1947), the Fifth Circuit was presented with a similar problem. The Alabama legislature enacted a one year statute of limitations to govern actions brought under the Fair Labor Standards Act of 1938. Congress had neglected to enact a statute of limitations for the Fair Labor Standards Act so that in the absence of the Alabama statute, wage and hour claims brought under the federal act would have been governed by a three year limitation for claims on an implied contract of employment and a six year limitation for claims under an express contract of employment. The Fifth Circuit reversed a district court judgment entered against certain employees on the ground that their claims were barred by the one year statute of limitations.

Even though it thought, given the nature of the wage and hour claims there asserted, that the one year limitation was not so burdensome and unreasonable "as to amount to a denial of justice," the court still went on to hold that the Alabama statute of limitations worked a discrimination against the federally created right and, therefore, contravened the supremacy clause, Article VI of the Constitution. The one year limitation discriminated against workers engaged in interstate commerce, whom Congress specifically sought to protect, because Alabama wage earners engaged in intrastate commerce retained the benefit of the three year and six year statutes of limitation. The Court of Appeals unanimously concluded that the Alabama statute was "manifestly hostile" to the exercise of federal rights and constituted "an unwarranted attempt on the part of the Alabama Legislature to discriminate against and abridge those rights." *Id.* at 86.

Our own circuit reached the same result for the same reason in striking down a South Carolina statute which attempted to saddle the Fair Labor Standards Act with a one year limitations period when ordinary wage claims arising in South Carolina were governed by a six year period. *Rockton & Rion Ry. v. Davis,* 159 F.2d 291 (4th Cir. 1946). Judge Dobie, writing for a distinguished Court (Parker, Soper, and Dobie, JJ), wrote that " . . . [t]he law seems well settled that a statute of limitations of a State is unconstitutional when the statute is directed exclusively at claims arising under a federal law. And particularly is this true when the State statute of limitations is discriminatory in its effect in favor of State claims and against Federal claims." *Id.* at 293.

Virginia's attempt to discriminate against the assertion of the § 1983 "constitutional tort" must fare no better than the efforts of state legislatures some 30 years ago to discriminate against our national labor laws. The constitutionality of Virginia's one year statute of limitations is governed by principles laid down by this circuit almost three decades ago and extracted, in turn, from a settled corpus of decisional law. *E.g.,* Campbell v. Haverhill, *supra,* 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895). Virginia's statute of limitations is directed solely at the § 1983 action and invidiously discriminates against the assertion of the "constitutional tort" because it limits the period for instituting such action to "one year next after the right to bring the same shall have accrued," while all other personal injury actions in Virginia are governed by a two year limitations period. Even if § 8–24 of the Code of Virginia were not so burdensome to the assertion of the federal claim as to "amount to a denial of justice," the Court is still bound by the law of this circuit to conclude that the Virginia limitations period effects a hostile and unconstitutional discrimination against important federal interests. See also Campbell v. Haverhill, *supra.* In so doing it denies § 1983 litigants the equal protection of the laws and contravenes the supremacy clause.

▬ Because of the Court's action today with regard to § 8–24 of the Code of Virginia, there still remains the question of the appropriate statute of limitations for governance of this action. The Court, therefore, holds as a matter of federal law that the timeliness of § 1983 "constitutional tort" actions shall be governed by Virginia's two year "personal injury" statute for the reasons enunciated by Judge Winter in Almond v. Kent, *supra,* 459 F.2d at 200. Since this action was filed within two years of the time that the alleged cause of action occurred, defendants' motion to dismiss this action because barred by the statute of limitations shall be denied.