**Debra Lynn CHRISTIAN, etc., Plaintiff,**

v.

**Vadie OWENS et al., Defendants.**

**Civ. A. No. 78–0039–B.**

United States District Court,
W. D. Virginia,
Big Stone Gap Division.

Sept. 7, 1978.

S. Strother Smith, III, Smith, Robinson & Vinyard, Abingdon, Va., for plaintiff.

James P. Jones, Penn, Stuart, Eskridge & Jones, Bristol, Va., for defendants.

MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

This action was instituted pursuant to 42 U.S.C. §§ 1983 and 1985 to redress alleged deprivations of plaintiff's decedent's civil rights which occurred while he was incarcerated in the Buchanan County Jail, Grundy, Virginia, on a charge of operating a

motor vehicle while under the influence of alcohol. Jurisdiction is founded on 28 U.S.C. § 1343.

While incarcerated, the decedent suffered a self-inflicted, mortal gunshot wound to his head. The weapon, a .25 caliber Titan automatic pistol, was secreted on his person when he was admitted to jail, and he shot himself only minutes after being locked in a cell. After being transported to the Grundy Hospital from the jail, he died.

Thereafter, this action was commenced seeking monetary and other relief for the alleged deprivation, under color of state law, of the decedent's constitutional rights. This case is presently before the court on defendant's motion for summary judgment, supported by affidavits.

## STATEMENT OF UNCONTESTED FACTS

Plaintiff Debra Lynn Christian is the administratrix of the estate of Henry Ellis Christian, deceased. Defendant Vadie Owens is the Sheriff of Buchanan County, Virginia, and defendants Julius Lester, Jr. and Emmett Goff are jailors in the Buchanan County Jail. Defendant Steven Gibson is the Commonwealth's Attorney for Buchanan County.

On November 4, 1977, at approximately 9:20 p. m., decedent Henry Ellis Christian was arrested and taken into custody by a Trooper of the Virginia State Police for operating a motor vehicle while under the influence of alcohol. The arrest took place in Buchanan County, Virginia. At the time of the arrest the Trooper performed a "patdown" search of the decedent and retrieved a small knife from his pocket. The Trooper found no other weapons or contraband. The decedent was then transported to Deel, Virginia, for a blood alcohol test and was subsequently taken to the Buchanan County Jail at Grundy. Defendants Lester and Owens were present and on duty upon the decedent's arrival; defendants Goff and Gibson were not present.

At approximately 10:20 p. m., after obtaining a warrant for the decedent, the arresting Trooper released the decedent into the custody of the night jailor, defendant Lester. Lester had relieved defendant Goff, the day jailor, at approximately 10:00 p. m., prior to the decedent's arrival at the jail. Lester took the decedent downstairs to the cell block and locked him in an individual cell.

At approximately 10:50 p. m., a loud noise resembling a gunshot, and apparently emanating from the cell block, resounded through the jail. Deputy Lester investigated the incident, reporting back that the decedent was in possession of a pistol. Defendants Owens and Lester, along with others present, went downstairs to the cell block and discussed how the pistol might be removed from the decedent. The decedent was only partially visible; the defendants could see only his feet and legs. They initially tried to communicate with the decedent through the cell block door, but they received no response. Having failed to communicate, the defendants decided that the pistol would have to be physically removed from the decedent. They removed the only other occupant of the cell block and, while being "covered" in case the decedent began firing his weapon, State Trooper H. L. Honaker entered the decedent's cell to remove the pistol. Trooper Honaker found the decedent lying on his bunk, hands folded over his stomach with the pistol in his right hand, aimed toward the door. Trooper Honaker removed the pistol from the decedent's grasp, and while doing so observed an apparently self-inflicted gunshot wound in the decedent's head and a large pool of blood under his bunk.

An ambulance was immediately called and the Commonwealth's Attorney, defendant Gibson, was notified. Gibson arrived at the jail after the decedent had been transported to the hospital. As a result of the wound, the decedent died in the hospital early the following morning. His death was subsequently ruled suicide.

## PLAINTIFF'S THEORIES OF ACTION

Plaintiff contends that defendants systematically and routinely violated State

rules and regulations promulgated by the Virginia State Board of Corrections setting forth administrative procedures to be followed in dealing with prisoners in local jails and lockups within the State of Virginia. These routine violations, it is asserted, establish a pattern of conduct that arbitrarily denies to the prisoners of the Buchanan County Jail, and did deny to the decedent while he was there, the equal protection of the law guaranteed under the Fourteenth Amendment to the Constitution.

Plaintiff also alleges that the defendants failed to secure, as required by regulation, adequate and timely medical attention for the decedent after he suffered the gunshot wound. The failure to provide needed medical care, plaintiff contends, caused the decedent's death and amounted to cruel and unusual punishment.

Thus, plaintiff theorizes, defendants, in violating State promulgated rules and regulations, acted under color of state law to deprive plaintiff's decedent of his rights secured by the Constitution under the Fifth, Eighth and Fourteenth Amendments.

In addition, plaintiff urges this court to invoke its pendent jurisdiction, and in the alternative seeks relief under 42 U.S.C. § 1985, to redress plaintiff's allegation that the defendants violated the Virginia Conspiracy Statutes, Va.Code Ann. §§ 18.2–499, 500 (Repl.Vol. 1975), in that they combined to "cover up" the circumstances surrounding the death of plaintiff's decedent and slandered plaintiff and her family by conspiring to, and representing, the death as suicide, both in an attempt to disparage the reputation of the decedent and to prevent plaintiff from pursuing this claim.

In her prayer for relief, plaintiff seeks a temporary injunction prohibiting defendants from refusing to turn over to the court documents, reports and statements made concerning the incidents leading up to and including the death of her decedent; a permanent injunction prohibiting the defendants from intimidating witnesses to the same incidents; $160,000.00 in lost wages; and $480,000.00 in damages under "the Virginia Conspiracy Statutes and/or 42 U.S.C. § 1985."

Defendants answered and moved for summary judgment on the basis of affidavits filed in this court. The court heard oral argument on the motion on June 14, 1978. At the hearing, plaintiff's attorney indicated to the court that he desired to file affidavits in opposition to defendants' motion, and accordingly the court granted thirty days in which to do so. On July 5, plaintiff's attorney reappeared before the court, without affidavits, and requested an extension of time in which to submit his affidavits. The court indulged plaintiff, and granted him an additional extension of time in which to file. Despite having had more than ample time to respond, to this date plaintiff has not submitted any pleadings, affidavits or evidence in opposition to defendants' motion for summary judgment. Plaintiff must therefore rely solely on the bare allegations contained in her pleadings in opposing defendants' motion.

Rule 56(e) of the Federal Rules of Civil Procedure provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e), 28 U.S.C. *See generally,* 6 Pt. 2 J. Moore, *Federal Practice* ¶ 56.22[2] (2d ed. 1976).

Rule 56(e) does not alter the initial burden on the movant to show the absence of a genuine issue of material fact. However, when the movant has met this burden, Rule 56(e) provides that in order for the opposing party to avoid having summary judgment entered against him, he may not rely merely upon his pleadings to oppose the motion, but must submit facts sufficient to show that a genuine issue of fact exists. It is hazardous for a party opposing summary judgment to fail to submit counter-affida-

vits; if he chooses to stand on his pleadings in the face of a motion for summary judgment supported by affidavits indicating the absence of a genuine issue of material fact, summary judgment shall be entered against him. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Conversely, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *Adickes, supra,* 398 U.S. at 160, 90 S.Ct. at 1609–10, (emphasis in original); *Cales v. Chesapeake & Ohio Ry.,* 46 F.R.D. 36 (W.D. Va.1969).

In the instant case, therefore, the court's inquiry is whether the defendants' supporting affidavits show the absence of a genuine issue of material fact. If they do show the lack of a genuine issue, summary judgment is appropriate; if not, plaintiff's failure to respond is not fatal.

### EQUAL PROTECTION

Even in construing all reasonable inferences in a light most favorable to plaintiff, as the court must do on this issue, plaintiff's equal protection claim is of no merit and will not long detain the court. Without offering a scintilla of evidence in support of her claim, plaintiff asserts that "defendants . . . continuously, continually, and routinely violated . . . state regulations in such a manner as to establish a pattern which has the effect of arbitrarily denying the inmates of the Buchanan County Jail (including your plaintiff's decedent) the equal protection of the law granted to inmates of other jails . . . " within Virginia.

To state a cause of action under the equal protection clause in this case, plaintiff must show that the State regulations, obviously constitutional and impartial on their face, were applied in an intentionally or purposefully discriminatory manner. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Plaintiff has not fulfilled this requirement. Moreover, "a discriminatory purpose is not presumed." *Snowden, supra,* 321 U.S. at 8, 64 S.Ct. 397; *Tarrance v. Florida,* 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572 (1903).

For purposes of summary judgment, even when the court assumes that these state regulations were systematically violated, although there is no evidence that they were, in the absence of a discriminatory intent there is no equal protection violation. *Snowden, supra; Mackay Tel. Co. v. Little Rock,* 250 U.S. 94, 39 S.Ct. 428, 63 L.Ed. 863 (1919). Unequal application or enforcement of a law or regulation equal on its face is not a constitutional deprivation without the necessary showing of intentional discrimination. *Sunday Lake Iron Co. v. Wakefield,* 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918); *Mackay, supra; Snowden, supra; Sims v. Cunningham,* 203 Va. 347, 124 S.E.2d 221, *cert. denied,* 371 U.S. 840, 83 S.Ct. 68, 9 L.Ed.2d 76 (1962).

Plaintiff's failure to come forward with evidence buttressing her claim and showing intentional discrimination is fatal to her claim. Plaintiff has stated no cause of action under the equal protection clause, and defendants are therefore entitled to summary judgment on this issue as a matter of law.

### DEFENDANT STEVEN GIBSON

Plaintiff does not pray for damages against Gibson,[1] but does seek an injunction restraining him "from refusing to turn over to the court any and all reports, statements and other evidence" concerning the events surrounding the death of the decedent. Plaintiff also seeks an injunction restrain-

---

1. In her prayer, plaintiff reserved the right to move at a later time for damages against defendant Gibson if and when evidence surfaced indicating his involvement in the alleged deprivation of the decedent's constitutional rights.

The court notes at this juncture, based on Gibson's affidavit, that he was not notified of the events at the Buchanan County Jail until 11:30 p. m. on November 4. Upon his subsequent arrival at the jail, the decedent had already been removed by ambulance to the Grundy Hospital. At no time did he assume control of or responsibility for the jail's operation. *See* Va.Code Ann. § 53–168 (Repl.Vol.1974).

ing Gibson from "approaching or intimidating any witnesses" to the same events.

It is evident from the affidavit of Gibson and from other exhibits before the court that plaintiff's unsupported allegations against this defendant are without merit. In a letter dated December 10, 1977, Gibson clearly indicated to plaintiff's attorney that he would cooperate with and assist plaintiff's attorney in the investigation concerning the death of plaintiff's decedent. To that end Gibson provided plaintiff's attorney with copies of the Toxicology Report and Ballistics Report filed after decedent's death, and further assured plaintiff's attorney, as he did the family of the deceased, that he was "more than willing to discuss the death of Henry Christian or supply reports and information which [he had in his] possession regarding [the death]".

It is evident that defendant Gibson has successfully refuted, by affidavit and otherwise, the unsupported allegations against him. On this factual basis the court finds that there is no genuine issue of material fact as to defendant Gibson and that he is entitled to summary judgment as a matter of law.

### DEFENDANT EMMETT GOFF

■ Plaintiff seeks monetary compensation from defendant Goff for his complicity in the alleged violations of jail regulations which, plaintiff submits, resulted in decedent's death.

Goff's affidavit reveals that plaintiff's claim against Goff on these grounds is frivolous; he was neither on duty nor present at the jail when the decedent was admitted and incarcerated, nor was he present when the decedent shot himself. Goff, as day jailor, was relieved by defendant Lester at approximately 9:50 p. m. on November 4, and did not return until after 11:00 p. m. that same evening, after making a security check on a business in Grundy.

It is clear that Goff in no way participated in the decedent's admittance to jail, nor in the removal of the pistol from the decedent and the subsequent transfer of the decedent to the hospital. Plaintiff does not attempt to contradict these facts, and accordingly, Goff is entitled to summary judgment as a matter of law.

### DEFENDANTS VADIE OWENS AND JULIUS LESTER, JR.

Plaintiff asserts that defendants Owens and Lester violated State regulations by failing to search the decedent upon his admittance to jail[2] and by failing to provide adequate and timely medical assistance to the decedent after he shot himself, and as a result of these violations the decedent died.

Plaintiff submits that the alleged violations rise to the level of a constitutional deprivation under the Eighth and Fourteenth Amendments' proscription of cruel and unusual punishment and is therefore redressable under 42 U.S.C. § 1983.

The initial relevant regulation states:

Upon admission, each inmate will have his clothing and person searched in accordance with existing practices. At this time, his personal property will be removed in accordance with Regulation X, PERSONAL PROPERTY AND MONEY.

Virginia Department of Corrections, Rules and Regulations for the Administration of Local Jails and Lockups, at 11 app. (1975).

■ The question before the court on this issue is whether defendants' failure to search the decedent upon his admission to jail, assuming for purposes of summary judgment that there was no such search, amounts to conduct redressable under 42 U.S.C. § 1983, since a search might have revealed the weapon with which the decedent subsequently shot himself. The court

---

**2.** Since plaintiff's factual contentions are ambiguous, it is unclear whether she relies on the allegation that the defendants failed to search the decedent in support of the alleged Eighth Amendment deprivation. Liberally construing the complaint, however, and construing all rea-sonable inferences in a light most favorable to the plaintiff, the court treats the allegation as if advanced in support of the Eighth Amendment theory. *Ely v. Honaker,* 451 F.Supp. 16 (W.D. Va.1977); *Van Horn v. Lukhard,* 392 F.Supp. 384 (E.D.Va.1975).

finds that this allegation does not state a claim cognizable under Section 1983.

The affidavit of the arresting Virginia State Trooper, M. A. Wimmer, shows that he performed a search of the decedent when he was taken into custody. Since the decedent was in Trooper Wimmer's custody until he was turned over to the jailor, there was no reason to believe that another search was necessary. Moreover, there is nothing to indicate that a search at the jail would have been more thorough than the field search performed by Trooper Wimmer. Performing strip searches of persons incarcerated for driving under the influence and similar offenses is not "in accordance with existing practices," and nothing short of a strip search in this case would have revealed the decedent's possession of the pistol, which was secreted in his boot. In this light, the prior search of the decedent certainly minimizes, if not obviates, the failure to search the decedent at the jail.[3]

Even assuming that the failure to search in this case was negligent, no cause of action under Section 1983 is presented since no constitutional deprivation was occasioned by the failure to search. The court is mindful, of course, that prison officials are subject to liability under Section 1983 for their gross or culpable conduct when that conduct deprives an inmate of his constitutional protection from cruel and unusual punishment or deprives an inmate of his reasonable expectation of protection from other inmates' acts of violence. *Woodhous v. Virginia,* 487 F.2d 889 (4th Cir. 1973); *Van Horn v. Lukhard,* 392 F.Supp. 384 (E.D.Va.1973); *Penn v. Oliver,* 351 F.Supp. 1292 (E.D.Va.1972). In this case, however, no relief is available. Plaintiff has not shown "an egregious failure to provide security" to the decedent, without which this isolated omission by defendants, involving only simple negligence at best, does not rise to the level of a constitutional deprivation. *Penn v. Oliver,* 351 F.Supp.

1292, 1294 (E.D.Va.1972). To the contrary, in light of the previous search, it is evident that the defendants exercised reasonable care, and any omission they made was neither grossly negligent conduct nor an egregious failure to provide security.

Plaintiff's attempt to impose upon defendants the burden of absolutely protecting intoxicated prisoners from themselves, with Section 1983 liability providing the leverage, is not supported by established precedent.

The court finds, therefore, that defendants' alleged violation of the regulation requiring a search of the decedent does not present a claim cognizable under 42 U.S.C. § 1983, and accordingly summary judgment is entered for the defendants.

■ Plaintiff also contends that, by failing to provide the decedent with timely medical attention, defendants violated the regulation requiring the availability of medical treatment for inmates:

> At all jails there shall be a doctor on call at all times. . . . If a doctor is not on call in the event of a medical emergency involving an inmate, a doctor will be called immediately or *the inmate will be transported immediately to the nearest available medical facility, depending upon the circumstances.* (emphasis supplied.)

Virginia Department of Corrections, *supra,* at 5.

> Plaintiff's conclusory allegations that the violation of this regulation, if indeed there was a violation at all, was "so barbarous in nature and so shocking to the conscience as to raise it from an act of mere negligence to gross and culpable conduct (if it was not actually willful and deliberate)" is totally void of merit. The court is fully aware that injuries sustained through arbitrary and grossly negligent police conduct are redressable under 42 U.S.C. § 1983. *See, e. g., Jenkins*

---

**3.** The conduct in issue here (suicide) is not the conduct that the regulation is primarily designed to prevent, since, at least as an evidentiary matter, a man is presumed to have a love of life and will not take his own life. The regulation's primary objective is the protection of prison personnel and other inmates, as well as the protection of an individual's personal property, and not the protection of an inmate from himself.

*v. Averett,* 424 F.2d 1228 (4th Cir. 1970). On this issue, however, it is clear to the court that plaintiff's exaggerated allegations alone cannot stand against the rebutting affidavits filed by defendants. The relevant affidavit indicates to the court that defendants' conduct was neither grossly negligent nor culpable. Indeed, there is no indication of negligence at all.

It appears from the affidavit of Virginia State Trooper H. L. Honaker, who participated along with the defendants in removing the pistol from the decedent, that as soon as the weapon was obtained, and immediately after discovering that the decedent had shot himself, an ambulance was summoned to take the decedent to the hospital. Plaintiff apparently suggests that upon first hearing the gunshot, defendants, with reckless abandon for their own safety, should have rushed into the decedent's cell to ascertain whether he had hurt himself. The reasonable and cautious approach actually taken by defendants, however, was a much more appropriate response to the situation. In taking action, the defendants had to consider the safety of the other prisoner in the cell block and their own safety, as well as that of the decedent. Under the circumstances, it is clear to the court that the defendants reacted to the crisis in a reasonable and well conceived manner. These uncontested facts effectively rebut plaintiff's bare allegation that the "decedent was held in jail for a lengthy period of time before the rescue squad was ever called", and clearly show to the court that defendants were not even guilty of mere negligence, but effectively complied with the regulations. Accordingly, Owens and Lester are entitled to summary judgment on this issue as a matter of law.

## CONSPIRACY

■ Plaintiff asserts that defendants conspired to present the decedent's death as suicide in an attempt to damage his reputation and also conspired to "cover up" the events surrounding the death in an effort to prevent the pursuit of this action, all in violation of the Virginia Conspiracy Statute. Plaintiff seeks monetary recovery "for any liability the [c]ourt may find under the Virginia Conspiracy Statute and/or 42 U.S.C. § 1985. . . ."

Initially, the court finds no cause of action under 42 U.S.C. § 1985 since plaintiff has failed to allege facts supporting such a claim. *Lawson v. Rockingham Co.,* 359 F.Supp. 171 (W.D.Va.1973). In addition, plaintiff has neither shown nor alleged a "racial, or . . . otherwise class-based, invidiously discriminatory animus behind the [alleged] conspirators' action[s]," and therefore her claim must fail. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Wilkins v. Rogers,* 581 F.2d 399 (4th Cir. 1978).

Secondly, in the exercise of its sound judicial discretion, and in light of the foregoing disposition, the court refuses to hear this issue as a pendent state claim. No federal judicial policy would be served by entertaining this issue, and in fact, judicial economy requires its dismissal. *UMWA v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, this claim is dismissed as to all defendants.

## SUMMARY AND DISPOSITION

While it is unfortunate that plaintiff's decedent committed suicide while incarcerated in the Buchanan County Jail, the record in this action establishes that he suffered no constitutional deprivations in that regard, and therefore cannot maintain this action in this court.

As a procedural matter, the material filed in this case by the defendants in support of their motion for summary judgment clearly indicates that both the burden of producing evidence to show the existence of a genuine issue of fact and the concomitant risk of an adverse judgment for failing to do so shifted to the plaintiff when defendants moved for summary judgment. Plaintiff failed to come forward with affidavits or any other response permitted under Rule 56 to show the existence of a genuine issue of material fact. Plaintiff's lack of responsiveness, although granted two extensions of time in

which to respond, is fatal to her action, since mere, general allegations will not prevent the award of summary judgment properly supported by affidavits. *Foy v. Norfolk & W. Ry.,* 377 F.2d 243 (4th Cir.), *cert. denied,* 389 U.S. 848, 88 S.Ct. 74, 19 L.Ed.2d 117 (1967); *Johnson v. McKee Baking Co.,* 398 F.Supp. 201 (W.D.Va.1975), *aff'd,* 532 F.2d 750 (4th Cir. 1976); Fed.R.Civ.P. 56(e), 28 U.S.C.

There being no genuine issue as to any material fact in this case, summary judgment is hereby entered for all defendants. This case is hereby dismissed and stricken from the docket of this court.