Edward X. JORDAN, Plaintiff,

v.

William ROBINSON, Commissioner of Bureau of Corrections, James Howard, Supt. State Correctional Institution at Pgh., Pa., Major Weyandt, Prison Guard at State Correctional Institution, Pgh., Pa., Dr. Gilberte, Doctor of State Correctional Institution, Pgh., Pa., Dr. Webster, Surgeon State Correc. Institution, Pgh., Pa.

Civ. A. No. 75–1627.

United States District Court,
W. D. Pennsylvania.

Jan. 18, 1979.

Edward X. Jordan, pro se.

Frederick R. Nene, Asst. Atty. Gen., Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

COHILL, District Judge.

Plaintiff, Edward X. Jordan, a state prisoner, brought this *pro se* civil rights action under 42 U.S.C. § 1983 against various officials and doctors at the State Correctional Institution at Pittsburgh, alleging violations of his constitutional rights in three separate claims. The defendants filed a Motion for Summary Judgment with ac-

companying affidavits. Oral arguments have been heard. The facts are not in dispute; therefore summary judgment is appropriate under Fed.R.Civ.P. 56, if the pleadings, admissions, and affidavits "show that the moving party is entitled to a judgment as a matter of law."

In this case we will enter summary judgment for the defendants on all three claims. We will discuss each of the claims separately.

### 1. The Medical Claim

The plaintiff's complaint states (and we will not attempt to point out possible typographical errors by the use of the word "*sic*"):

"On 5/2/75, the plaintiff went over to the hospital to see Doctor Gilberte, because he had a CIST on his back, The defendant Dr. Gilberte cut the cist out, without using any kind of medication to numb it, the defendant had flicked cruel and usual punishment, only because he didn't like the plaintiff, Anyother inmate that i've seen go over there to get a cist cut out he always got medication to numb the cist before it was cut out. This was and is a violation of of my constitutional rights under the 8th amendment.

On 5/12/75, The plaintiff went over to see the defendant Dr. Webster, surgeon, and on that day the defendant operated on the plaintiff, right above his right eye, When the plaintiff came to this institution he had 20/20 eye sight and now he has to wear glasses because his eye sight had gone bad on his, the plaintiff believes that the operation that DR. Webster done has done damages to his eyes, therefore enflicting cruel and harash punishment on the plaintiff, and thus violated his civil rights under the color of law."

The defendant doctors filed affidavits specifically denying these allegations; attached to these affidavits were copies of hospital records, showing that novocaine had been administered to the plaintiff before removal of the cyst. Plaintiff did not submit affidavits, as required in Fed.R.

Civ.P. 56(e), but since this was a *pro se* proceeding, we agreed to accept plaintiff's argument at the hearing as his response to defendants' affidavits.

Allegations of "cruel and unusual punishment" to prisoners have often been considered by the courts, and tests have been established to determine when such allegations approached constitutional proportions. A typical test was stated by the United States District Court for the Eastern District of Pennsylvania: "conditions of confinement of inhuman and barbaric proportions which shock the conscience of the court constitute cruel and unusual punishment and are actionable under the Civil Rights Act." *Newsome v. Sielaff*, 375 F.Supp. 1189 (E.D.Pa.1974). *See also Kirby v. Blackledge*, 530 F.2d 583 (4th Cir. 1976); *Mukmuk v. Commissioner of Dept. of Correctional Services*, 529 F.2d 272 (2d Cir. 1976), *cert. denied* 426 U.S. 911, 96 S.Ct. 2238, 48 L.Ed.2d 838 (1977). The United States Court of Appeals for the Third Circuit has spoken on the issue of when allegations of improper medical care may amount to valid Eighth Amendment claims. In *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970), Judge Aldisert wrote:

> " . . . [A]n allegation of negligent conduct by a state public official is not sufficient, in and of itself, to bring a claim within § 1983.
>
> .    .    .    .    .
>
> Without a proper allegation of constitutional deprivation, an action requesting damages for personal injuries sounds only in common law or statutory tort and, because no federal interest is involved, is triable only under state law in a state court.

It is only where an inmate's complaint of improper or inadequate medical treatment depicts conduct so cruel or unusual as to approach a violation of the Eight Amendment's prohibition of such punishment that a colorable constitutional claim is presented . . . Many cases describe the necessary additive as 'exceptional circumstances' . . . [conduct] so grossly incompetent, inadequate or excessive 'as to shock the general conscience or to be intolerable to fundamental fairness.' " 428 F.2d at 6 (1970) (citations and footnotes omitted).

*See also Walnorch v. McMonagle*, 412 F.Supp. 270, 274 (E.D.Pa.1976), for the proposition that "[i]n this Circuit, an allegation amounting to nothing more than negligence is insufficient to state an eighth amendment claim for improper or inadequate medical treatment."

■ Plaintiff's characterization of the treatment as "cruel and unusual" does not make it so. At oral argument plaintiff admitted that the essence of his medical claims is medical malpractice; he alleged that Dr. Gilberte failed to use novocaine while removing a cyst on plaintiff's back and that Dr. Webster, while excising a lesion above plaintiff's eye, affected and impaired his vision. These are claims of negligence, or, at most, considering plaintiff's charge at oral argument that improper medical procedures were followed in order to harass him, claims of intentional torts. Since no constitutional deprivation is present on these facts, defendants are entitled to summary judgment on this claim.

### 2. The Lock-up

On this count, the plaintiff's complaint, in part, alleges:

> On Nov. 28, 1975, here at the state correctional Institution, there was trouble, between fellow-inmates between a few inmates which are in same moslem belief, . . . The defendant L. Weyandt, Major of the guards, and the defendant here in this complaint order all the Moslems to there ceels, and locked them up for 7 days without them evening being involved."

We construe the constitutional allegation in this count to be a deprivation of the plaintiff's due process rights under the Fourteenth Amendment.

■ The Supreme Court of the United States has recognized that "though his rights may be diminished by the needs and exigencies of the institutional environment,

a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Procedural due process must be accorded whenever any "significant" sanctions are imposed on prisoners. *See Clutchette v. Procunier*, 497 F.2d 809, 814 (9th Cir. 1974) and cases cited therein; *cf., Gray v. Creamer*, 465 F.2d 179 (3d Cir. 1972). However, the procedure that is due a prisoner is necessarily limited by the peculiar circumstances of imprisonment and must be weighed against the competing interests of society and of other prisoners. We cite again Judge Aldisert's thoughtful opinion in *Gittlemacker v. Prasse, supra*, at 4:

> "[s]o long as incarceration as a form of punishment continues, we are required perforce to recognize that, archaic and indefensible though it may be, its objective is to circumscribe certain activities and opportunities not only available in, but also characteristic of, an open societal setting. And, unpleasant as it is to contemplate the physical restrictions of a 'settled environment,' we must also recognize that even those rights which survive penal confinement may be diluted by peculiar institutional requirements of discipline, safety, and security."

The undisputed facts before us show that a very serious incident occurred in the state correctional facility on November 28, 1975, apparently involving a power struggle among prison members of the Muslim faith. Following up on a report of an assault in the south block of the prison, guards apprehended four prisoners armed with pipes, bars, and bar bell weights. Three prisoners had received head injuries before guards arrived. When prison authorities learned that the disturbance was indicative of an internal struggle among the Black Muslims, a lock-up of Black Muslims and others believed to be involved in the struggle was initiated. The lock-up was conducted pursuant to Administrative Directive § 801, a regulation of the prison which provides for immediate lock up in times of emergency. Directive § 801 was submitted as an exhibit attached to the defendant's affidavits. In all, 45 prisoners were locked up. The subsequent investigation demonstrated some hostility among particular inmates and evidenced an ongoing conflict among the various Muslims. The plaintiff was believed to be a Muslim because his middle initial, "X," often signifies Muslim belief. (Plaintiff's original complaint indicated that he was a Muslim, but he subsequently submitted affidavits to the contrary, and at oral argument on this motion stated that he has never been a Muslim.) He was locked in his own cell, not in solitary or in the Behavior Adjustment Unit, and was released after one week. He admits that he was one of the first to be released.

The plaintiff's claim of denial of due process rests on the fact that he was locked up even though he was not involved in the fracas and his allegation at the hearing that he was not even a Muslim. However, the affidavits filed by the defendants show that the lock-up was as much to protect individual prisoners from harm as to punish or control them. At least one circuit court has held that prisoners placed in protective rather than punitive confinement are entitled to a lesser degree of procedural due process, *Bloeth v. Montayne*, 514 F.2d 1192 (2d Cir. 1975). And we note parenthetically that had the prison authorities not taken action in response to the disturbance, they might have been liable to any prisoners injured because they failed to protect the prisoners' liberty interest in personal security. *See Van Horn v. Lukhard*, 392 F.Supp. 384 (E.D.Va.1975).

Considering the circumstances that provoked the lock-up, its nature, length, and purpose, and the fact that it was done pursuant to prison regulations, we find as a matter of law that it did not violate any due process rights of the plaintiff. Admittedly, plaintiff was inconvenienced and restricted. That prison authorities may have exercised an excess of caution in the mistaken belief that he was a Muslim does not raise this restriction and inconvenience to a constitutional deprivation. Although we recognize that a measure of liberty is lost when a member of the general population is

locked in his cell, we agree with Judge Huyett of the District Court for the Eastern District of Pennsylvania, who, in a similar case, wrote:

> "In sum, the prisoner's liberty interest is so small, the probable value of added safeguards so slight, and the legitimate state interest so overwhelming, that any liberty interest is outweighed entirely by the state need for discretion limited—if at all—only by after the fact adjudication of the substantive decision to order the lockup in the first place."

*Saunders v. Packel*, 436 F.Supp. 618 (E.D. Pa.1977). Therefore, the defendants are entitled to summary judgment as a matter of law on the plaintiff's due process claim.

### 3. The Hat Incident

■ The plaintiff's third count against defendants is a claim that he was forced to pay $1.50 for destroying state property—tearing a brim off a hat that he claims was given to him by another inmate with the brim already off. We construe this as a claim of denial of property without due process. The record before us shows, and the plaintiff admitted at oral argument, that a hearing was conducted within the prison concerning this claim, with several officials present, and the plaintiff was charged $1.50 as a result of this hearing. Plaintiff apparently does not understand that an unfavorable decision by prison authorities at a hearing is not the same as a denial of process. We find that this hearing, conducted within the prison, was sufficient to guarantee any rights conceivably involved in this hat incident. Summary judgment will be entered in favor of the defendants on this count.

An appropriate order will follow.