**Leonard EVANS**

v.

**CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF MARYLAND.**

Civ. No. M–80–2898.

United States District Court,
D. Maryland.

July 16, 1981.

Charles J. Wargo, Baltimore, Md., for plaintiff.

Leonard E. Cohen, Mary E. Pivec, and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff in this action, Leonard Evans, has sued his former employer, Chesapeake and Potomac Telephone Company of Maryland ("C & P Telephone") pursuant to 42 U.S.C. § 1981 for alleged racial discrimination. Presently pending before the court is a motion for partial summary judgment filed on behalf of C & P Telephone. The court believes a hearing is unnecessary, Local Rule 6(E).

### I. Summary of Plaintiff's Claims

The plaintiff began his employment with C & P Telephone on July 17, 1970, as a maintenance worker at 320 St. Paul Street. The plaintiff was discharged on November 16, 1977, purportedly due to customer complaints regarding sexual harassment by the plaintiff. While employed at C & P Telephone, the plaintiff was assigned to various positions in C & P offices in the Baltimore area.

The plaintiff's complaint in this action was filed on November 5, 1980. The principal thrust of the complaint is that the plaintiff was improperly terminated by C & P Telephone on November 16, 1977, due to racially discriminatory practices of the company as well as in retaliation for his having filed a claim of racial discrimination under Title VII. The complaint also alleges other generalized claims of racial discrimination by C & P Telephone alleged to have occurred throughout plaintiff's employment, relating to hiring practices, promotions, compensation, work conditions, work facilities, and disciplinary practices. The bases for these latter claims were explored during the deposition of the plaintiff on January 5, 1981, and February 20, 1981, (Papers 32 and 33), and shall be briefly set forth.

### A. Hiring Practices

Prior to the time plaintiff began working for C & P Telephone, he took certain placement tests in an effort to qualify for a clerical position (Paper 32, pp. 8–9). Plaintiff alleges he was initially told he passed those tests, but later was told he had failed them (Paper 32, p. 16). As a result, plaintiff was hired as a maintenance worker. His claim of discriminatory hiring therefore appears to be based on an allegation that placement tests are discriminatorily graded so that minorities are hired and placed in inferior positions.

### B. Promotions

During plaintiff's employment with C & P Telephone, he received only one promotion which occurred in September, 1971. After beginning work for C & P Telephone, he was given remedial classroom instruction in order to qualify for technical career advancement. Following that instruction, he again took C & P Telephone's placement tests, which he passed. The plaintiff was then promoted to the position of installer repairman in September, 1971. After C & P's initial training, he was assigned to the Hunt Valley Service Center (Paper 32, pp. 6, 13–14). The plaintiff remained in the position of installer repairman until the time of his termination in 1977, although he worked in different service centers in the Baltimore area.[1]

---

1. The plaintiff began working at Hunt Valley, but was cited for tardiness and absenteeism. The plaintiff stated that these problems resulted from transportation difficulties, and he requested a transfer into the city (Paper 32, p. 29; Paper 31, Affidavit of J. Olsson, ¶ 3). The plaintiff was transferred to other service centers within Baltimore County, but was not transferred into the city. Specifically, the plaintiff was transferred to the Parkville/Carney Service Center, the Towson Service Center, and in 1973, at his request, back to the Park-

The basis of plaintiff's complaint regarding promotion is that he received only one promotion while employed at C & P Telephone, and he was overlooked for other promotional opportunities (Paper 32, p. 45).

The plaintiff states that he was not promoted to the position of "PBX Repairman" on two occasions between 1970 and 1976, although he was not certain of the precise time frame of these vacancies (Paper 32, pp. 45–51).

### C. Compensation

The plaintiff's complaint alleges that C & P Telephone engages in racial discrimination in the manner in which it awards employee compensation. The plaintiff asserts the following four points in support of this allegation:

(1) Plaintiff was denied a scheduled raise in February of 1974 (Paper 33, p. 207);

(2) Plaintiff was denied an invitation to attend a company sales award breakfast and other sales award functions (Paper 32, pp. 73–77);

(3) Plaintiff did not receive extra compensation for working on the "pre-wire crew" (Paper 32, pp. 65–73);

(4) Plaintiff was never selected for a manager relief job and therefore never received manager relief pay (Paper 32, p. 67).

As to plaintiff's complaint regarding his raise, C & P Telephone states that plaintiff was denied a scheduled raise in February, 1974, purportedly due to poor work performance ratings. The plaintiff received his raise in March, 1974 (Paper 31, Affidavit of J. Olsson, ¶ 4).

As to sales awards functions, defendant's records indicate that the plaintiff was erroneously omitted from a list of those invited to attend a sales breakfast on October 12, 1977 (Paper 31, Affidavit of J. Olsson, ¶ 7). The district manager states that he attempted to correct the error by inviting the plaintiff to breakfast, but the plaintiff refused the invitation (Paper 31, Affidavit of B. Costanza, ¶ 4; Paper 32, pp. 76–77).

As to his complaints regarding compensation for working on the pre-wire crew and manager relief pay, the plaintiff was unable to provide approximate dates when he was denied compensation.

In January, 1977, the plaintiff had a second level grievance hearing over a one-day suspension for absenteeism. At that time, other complaints of discrimination made by plaintiff were heard, including those relating to tour assignments, overtime allotment, sales awards, management relief selection and pay, and light duty work. The plaintiff and the union agreed to settle all of these grievances. The company overturned the plaintiff's suspension and awarded him relief. Plaintiff then agreed to bring all further complaints of discrimination to the attention of his supervisor, one Bernard Costanza, the District Manager. According to Mr. Costanza, the plaintiff made no further complaints regarding compensation or other forms of alleged discrimination (Paper 31, Affidavit of B. Costanza, ¶ 3).

### D. Work Conditions

The plaintiff's specific claims regarding the conditions of his employment are as follows:

(1) Plaintiff was once discriminatorily scheduled to work an undesirable shift in 1976, although a junior white employee was available (Paper 32, p. 94);

(2) Plaintiff was assigned to work the less desirable "Lyric" area more frequently than white employees (Paper 32, pp. 101–05);

ville/Carney Service Center. The plaintiff remained at the Parkville/Carney Service Center from 1973 until his termination in 1977 (Paper 32, pp. 32–40; Paper 31, Affidavit of J. Olsson, ¶ 3). According to plaintiff's supervisor at the Parkville/Carney Service Center, the plaintiff did not request any further transfers after 1973

(Paper 31, Affidavit of J. Walsh ¶ 5). The plaintiff alleges that he wanted to be transferred into the city, that the company was aware of his wishes, but that he was kept in the county due to an effort on the part of the Urban League to get more blacks working in the county (Paper 32, pp. 29–32).

(3) Plaintiff was denied light duty work assignments (Paper 32, pp. 105–06);

(4) Plaintiff was denied the opportunity to work overtime (Paper 32, pp. 96–101).[2]

The latter three allegations were raised and were settled in the grievance hearing in February, 1977, as previously indicated.

### E. *Work Facilities*

The purported basis for plaintiff's claim regarding work facilities is that plaintiff was not transferred from Baltimore County to the city upon request, as previously discussed.

### F. *Disciplinary Practices*

As to disciplinary practices, plaintiff states that the only time any disciplinary action was taken against him was in late 1976 when he received a one-day suspension. As previously mentioned, plaintiff filed a grievance regarding that suspension which was settled by the parties. As a result, the plaintiff's pay was restored and all references to the suspension were expunged from his employment records.

### II. *Legal Analysis*

The defendant has filed a motion for partial summary judgment on two theories. First, the defendant claims that it is entitled to summary judgment as to all plaintiff's allegations of discrimination which occurred prior to November 10, 1977, based upon the statute of limitations. This motion encompasses all of plaintiff's claims except those relating to his actual termination. As a further matter, the defendant claims it is entitled to partial summary judgment on plaintiff's § 1981 claim of retaliatory termination.

### A. *Statute of Limitations*

In actions brought under § 1981, the relevant statute of limitations is obtained by reference to the most analogous limitations period for actions brought under state law. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). As previously stated by this court, the appropriate limitations period under Maryland law is the general three-year statute. *Linder v. Litton Systems, Inc., Amecon Division,* 81 F.R.D. 14, 17 (D.Md. 1978); *see also Hall v. Board of County Commissioners of Frederick County,* 509 F.Supp. 841, 848 (D.Md.1981)[3] and cases cited therein. Thus, the defendant argues that the plaintiff is barred from litigating those claims relating to alleged discriminatory acts or practices which occurred prior to November 10, 1977. In response, the plaintiff contends that the complaint alleges a continuing pattern of racial discrimination on the part of C & P Telephone which culminated in the plaintiff's termination on November 16, 1977. The plaintiff argues that these prior alleged discriminatory acts are part of a continuing violation and are not time barred.

As previously described, the plaintiff's complaint alleges a broad range of discriminatory acts and practices by C & P Telephone. The only alleged discriminatory act which actually occurred during the limitations period was the plaintiff's termination. The court does not believe that the plaintiff may bootstrap other broad allegations of discriminatory practice onto his timely claim of discriminatory termination. Prior alleged discriminatory acts by C & P Telephone may be admissible evidence bearing on plaintiff's claim of discriminatory termination, but this case may not proceed on separate theories relating to discriminatory hiring, promotion, work conditions, etc. Although it is true that "continuing" claims will not be barred by limitations, *Linder v. Litton Systems, Inc., Amecon Division,* 81 F.R.D. at 17, a plaintiff may not circumvent the limitations period merely by labeling an act as a "continuing" violation. *Corbin v.*

---

2. According to company worksheets, the plaintiff did not make himself available for overtime work during the period between November 10, 1977 and November 16, 1977 (Paper 31, Affidavit of J. Walsh, ¶ 4).

3. Although the decision in *Hall* specifically discussed actions brought under § 1983, the same reasoning would apply to suits under § 1981.

*Pan American World Airways, Inc.*, 432 F.Supp. 939, 944 (N.D.Calif.1977). This is particularly true when the acts complained of are isolated, completed acts involving a particular individual. *Cf. Loo v. Gerarge*, 374 F.Supp. 1338, 1340 (D.Hawaii 1974). As stated in *Corbin v. Pan American World Airways, Inc.*, 432 F.Supp. at 944:

> "Completed acts such as termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature. Rather, a plaintiff must maintain that a pattern of discrimination or an employment practice presently exists to perpetuate the alleged wrong."

(citations omitted). Thus, the plaintiff may not argue that dissimilar acts are part of a continuing pattern of discrimination. To hold otherwise would allow an individual plaintiff, with any discrete timely claim of discrimination, to raise any other unrelated acts which occurred during the tenure of his employment. This would nullify the policy against "stale claims" which finds voice in the statute of limitations. The court will grant defendant's motion for partial summary judgment as to all theories of recovery based on acts which occurred prior to November 10, 1977.

### B. *Retaliatory Termination*

█ The defendant argues that plaintiff may not maintain a § 1981 cause of action based on retaliation for filing a Title VII charge. The principal case supporting the defendant's position is *Tramble v. Converters Ink Company*, 343 F.Supp. 1350 (N.D.Ill. 1972), where the court held that such retaliatory conduct cannot be the basis of a § 1981 cause of action because the filing of a discrimination suit with the EEOC may raise issues of other types of discrimination, whereas § 1981 prohibits only racial discrimination. *See also Take All v. WERD, Inc.*, 23 F.E.P. Cas. 947 (M.D.Fla.1979); *Grant v. Bethlehem Steel Corporation*, 22 F.E.P. Cas. 680 (S.D.N.Y.1978), *aff'd on other grounds*, 622 F.2d 43 (2d Cir. 1980); *Hudson v. IBM*, 22 F.E.P. Cas. 947 (S.D.N.Y. 1975), *aff'd on other grounds*, 620 F.2d 351 (2d Cir. 1980). Other cases, however, suggest that such retaliatory measures may be violative of § 1981. *See, e. g., London v. Coopers & Lybrand*, 644 F.2d 811 (9th Cir. 1981); *Crawford v. Roadway Express, Inc.*, 485 F.Supp. 914 (W.D.La.1980); *Garcia v. Rush-Presbyterian Medical Center*, 80 F.R.D. 254 (N.D.Ill.1978). This court is persuaded by the reasoning set forth by the Ninth Circuit in *London v. Coopers & Lybrand*, 644 F.2d at 819, as follows:

> "While we are not prepared to hold that retaliation for the filing of *any* charge with the EEOC will violate § 1981, we do hold that where, as here, a plaintiff charges an employer with racial discrimination in taking retaliatory action, a cause of action under § 1981 has been stated. If an employer retaliates against the former employee with the intent to perpetuate the original act of discrimination, or with some other racially discriminatory motive in mind, then interference with rights protected by § 1981 has occurred, and that section must come into play."

Where, as here, the plaintiff's Title VII complaints were based on racial discrimination and plaintiff alleges that his discharge was racially motivated and was based, in part, on retaliation for filing Title VII charges, plaintiff has stated a cause of action under § 1981. *Cf. Windsor v. Bethesda General Hospital*, 523 F.2d 891, 894 (8th Cir. 1975). Thus, defendant's motion for partial summary judgment on this issue is denied.

### III. *Conclusion*

Accordingly, it is, this 16th day of July, 1981, by the United States District Court for the District of Maryland,

ORDERED that defendant's motion for partial summary judgment is GRANTED in part and DENIED in part, as herein set forth.