**Leonard EVANS**

v.

**CHESAPEAKE AND POTOMAC TELE-PHONE COMPANY OF MARYLAND.**

**Civ. A. No. M–80–2898.**

United States District Court,
D. Maryland.

March 16, 1982.

Charles J. Wargo, Baltimore, Md., for plaintiff.

Leonard E. Cohen, Mary E. Pivec and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendant.

MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

The plaintiff in this action, Leonard Evans, has sued his former employer, the Chesapeake and Potomac Telephone Company of Maryland (C & P Telephone), pursuant to 42 U.S.C. § 1981 for alleged racial discrimination in connection with his employment. The defendant's first motion for summary judgment based on, among other things, the expiration of the relevant limitations period was denied previously, although summary judgment was granted as to all theories of recovery based on acts occurring prior to November 10, 1977.[1] Citing an alleged change in the law in this District, the defendant moved for leave to file an amended answer and for summary judgment as to the plaintiff's remaining claims.[2] The court, without a hearing,[3]

---

1. Paper No. 37. *See Evans v. Chesapeake and Potomac Telephone Co.,* 518 F.Supp. 1074 (D.Md.1981).

2. Paper No. 47.

3. Local Rule 6(E).

granted the motion for leave to amend and denied the renewed motion for summary judgment.[4] This Memorandum sets out the reasons for the court's decision on the latter motion.

The plaintiff's legal claims and factual allegations have been summarized previously by the court [5] but will be repeated briefly for the convenience of the reader.

The plaintiff began his employment with C & P Telephone on July 17, 1970, as a maintenance worker at 320 St. Paul Street and was discharged on November 16, 1977, purportedly due to customer complaints regarding sexual harassment by the plaintiff. While employed at C & P Telephone, he was assigned to various positions in C & P offices in the Baltimore area.

The complaint in this action was filed on November 5, 1980. The principal thrust of the complaint is that the plaintiff was improperly terminated by C & P Telephone on November 16, 1977, due to racially discriminatory practices of the company as well as in retaliation for his having filed a claim of racial discrimination under Title VII.

### I.

Until recently, the judges of this District were in agreement that the period of limitations applicable to a claim under 42 U.S.C. § 1981 was the general, three-year period set out in *Md. Cts. & Jud. Proc. Code Ann.* § 5–101 (1980 Rep. Vol.).[6] In *McGill v. General Electric Co.*, 524 F.Supp. 1126 (D.Md.1981), Judge Young held that the appropriate period of limitations for a section 1981 claim in the employment context was the six-month period for filing an administrative charge with the Maryland Commission on Human Relations. *Md. Code Ann.* art. 49B, § 9(a) (1979 Rep. Vol.). Since *McGill*, two other judges of this court have held, based on the reasoning of that case, that section 1981 claims were subject to dismissal if not filed within six months of the alleged discriminatory act.[7]

Although the judges of this court are not bound by each other's rulings, there is a special need for uniformity within a District in connection with matters such as periods of limitation. Nevertheless, the undersigned member of this court is constrained, respectfully, to disagree with the reasoning of *McGill*, and, therefore, declines to follow its result.

For reasons to be developed below, the court holds that the most appropriate state law period of limitations applicable to a claim under section 1981 is the three-year period of *Md. Cts. & Jud. Proc. Code Ann.* § 5–101, and thereby reaffirms its prior decisions on this question. *E.g., Evans v. Chesapeake & Potomac Tel. Co.*, 518 F.Supp. 1074, 1077 (D.Md.1981); *Lewis v. Bethlehem Steel Corp.*, 440 F.Supp. 949, 953 (D.Md.1977).

### II.

Because the Reconstruction Civil Rights Acts, 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986, do not themselves contain limitations periods, 42 U.S.C. § 1988 requires that the federal courts in such cases borrow, with certain conditions, "an appropriate limitations period from the state in which the claims arose." *McCausland v. Mason County Board of Education*, 649 F.2d 278, 279 (4th Cir. 1981). If a state statute prescribes a specific period of limitations for actions brought under the Reconstruction Civil Rights Acts, this state-specified limitations period will be applied, *see Almond v. Kent*, 459 F.2d 200, 203 n.3 (4th Cir. 1972), provided it does not unreasonably discriminate against or burden the federal right to be protected, *Johnson v. Davis*, 582 F.2d 1316 (4th Cir. 1978). Where no such state statute exists, as in Maryland, the federal courts must look to a state limitations period incident to an "analogous"

---

4. Paper No. 51.

5. *See* note 1 *supra.*

6. *See* cases cited in Part III *infra.*

7. *McKee v. SCM Corp.*, No. R–79–162 (D.Md. Jan. 29, 1982) (Ramsey, J.) (unpublished); *Brice v. Crown, Cork & Seal Co.*, No. H–78–1207 (D.Md. Jan. 15, 1982) (Harvey, J.) (oral opinion).

state recognized right to determine the appropriate limitations period to apply to the federally protected right. *McCausland v. Mason County Board of Education*, 649 F.2d at 279; *McCrary v. Runyon*, 515 F.2d 1082, 1097 (4th Cir. 1975) (*en banc*), aff'd, 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415 (1976); *Bireline v. Seagondollar*, 567 F.2d 260, 262 (4th Cir. 1977).

### III.

■ A common thread in the Fourth Circuit decisions in this area is that, in determining the "appropriate" or "analogous" state statute of limitations to be applied, the federal courts must not focus solely on the specific relief sought by the federal plaintiff but rather on the broad nature of the federal right giving rise to the federal claim.[8]

In a series of decisions, beginning with *Almond v. Kent*, 459 F.2d 200 (4th Cir. 1972), the Fourth Circuit has determined that "it is to the state statute of limitations for personal injuries to which we usually look in determining when claims [brought under the Reconstruction Civil Rights Acts, 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986] are time-barred." *McCausland v. Mason County Board of Education*, 649 F.2d at 279.

In *Almond*, an action brought pursuant to 42 U.S.C. § 1983, a prisoner alleged he was (1) physically beaten, (2) placed in isolation, (3) subject to excessive bail and (4) deprived of his property without due process of law by the Sheriff of Augusta County, Virginia and the Virginia State Police. The court applied the then relevant statute of limitations, *Va. Code Ann.* § 8–24 (1957 Rep. Vol.), which provided as follows:

"Every action for personal injuries shall be brought within two years next after the right to bring the same shall have accrued. Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued. . . . "

Almond had contended that the beating and other personal injury claims were subject to Virginia's two-year statute of limitations, and that the remaining claims were subject to a five-year limitations period. The defendants conceded that the two-year period applied to Almond's personal injury claims but argued for a one-year period as to the other claims.

Adopting a two-year period for all of Almond's claims under section 1983, Judge Winter stated for the court:

"We agree that, to the extent that Almond's § 1983 complaint alleges a violation of his constitutional rights resulting in personal injuries of the type that would be actionable at common law, the Virginia two-year period unquestionably applies. But this is so, not because there was a right of recovery at common law but because there was a violation of a constitutional right not to be beaten. We think it follows that the Virginia two-year period applies to all other rights which may be redressed under § 1983 by the recovery of money damages. Section 1983 creates a federal cause of action, unknown at common law, '[for] the depri-

---

8. The other Courts of Appeals have adopted varying approaches. The Second and Ninth Circuits borrow state limitations periods for the bringing of a suit based on a statute. *E.g., Plummer v. Western International Hotels Co., Inc.*, 656 F.2d 502, 506 (9th Cir. 1981); *Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 (2d Cir. 1979). The Third Circuit apparently fragments the allegations in the complaint and applies different limitations periods to each issue. *E.g., Skehan v. Board of Trustees*, 590 F.2d 470, 476–77 (3d Cir. 1978); *Davis v. United States Steel Supply*, 581 F.2d 335, 337–41 (3d Cir. 1978). The Seventh Circuit has adopted the former approach, *e.g., Teague v. Caterpillar Tractor Co.*, 566 F.2d 7, 8 (7th Cir. 1977), following *Beard v. Robinson*, 563 F.2d 331, 334–38 (7th Cir. 1977) (§ 1983), except for situations in which the result would be unreasonable. *Movement for Opportunity & Equality v. General Motors Corp.*, 622 F.2d 1235, 1241–44 (7th Cir. 1980).

vation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] ...' This right of recovery depends upon federal considerations, and it is not one which is concerned with the archaic concepts of survivability of the common law."

\* \* \* \* \* \*

"In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person *or to the constitutional or federal statutory rights* which emanate from or are guaranteed to the person. *In the broad sense, every cause of action under § 1983 which is well-founded results from 'personal injuries.'*"

459 F.2d at 203–04 (citations omitted) (emphasis supplied). *See McCausland v. Mason County Board of Education*, 649 F.2d at 279 (quoting *Almond* and adopting West Virginia's tort statute of limitations as applicable to actions under §§ 1981–1986.)

As additional support for its rejection of the one-year limitations period,[9] in *Almond* the court stated:

"Even if we conclude that a § 1983 action is not a suit for 'personal injuries' within the Virginia concept of that type of litigation, it is 'more serious than a violation of a state right ... even though the same act may constitute both a state tort and the deprivation of a constitutional right.' *Monroe v. Pape*, 365 U.S. 167, 196, 81 S.Ct. 473, 488 [5 L.Ed.2d 492] (1961) (Harlan, J.). Accordingly, we think that it more properly belongs at the two-year step in Virginia's statute of limitations scale of values. It is more important than those transitory torts for which a one-year period is prescribed, and it is not to redress damage to property and estate for which Virginia prescribes a five-year period."

459 F.2d at 204.

The reasoning of *Almond* was extended in *Allen v. Gifford*, 462 F.2d 615 (4th Cir. 1972) (per curiam), to actions brought pursuant to 42 U.S.C. § 1982. In that case, the plaintiffs sought damages for humiliation, emotional distress and anxiety in connection with the defendants' initial refusal to sell them a house. Applying Virginia's two-year limitations periods adopted in *Almond,* the court concluded that "[b]oth § 1982 and § 1983 were enacted to redress the infringement of civil rights. Both allow recovery for personal wrongs." *Allen v. Gifford*, 462 F.2d at 615.

In an action under section 1981, in which the district court awarded damages for embarrassment, humiliation, and mental anguish suffered by a black infant and his parents for denial for racial reasons of admission to a private school, the Fourth Circuit again applied Virginia's two-year limitations period. *McCrary v. Runyon*, 515 F.2d 1082, 1097 (4th Cir. 1975) (*en banc*), aff'd, 427 U.S. 160, 179–82, 96 S.Ct. 2586, 2598–2600, 49 L.Ed.2d 415 (1976).

Finally, the court held Virginia's two-year statute of limitations applicable to employment discrimination claims under section 1981 citing *Allen v. Gifford*, and ac-

---

**9.** Judge Widener, citing the Rules of Decisions Act, 28 U.S.C. § 1652, and the Supreme Court's opinion in *Robertson v. Wegman*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), would apply the survivability clause of Virginia's statute which the majority declined to apply. *See Johnson v. Davis*, 582 F.2d 1316, 1319–20 (4th Cir. 1978) (Widener, J., dissenting from denial of rehearing *en banc*). Judge Widener's view is that the two-year period in Virginia's statute applies only to bodily injuries and that the five- and one year periods are "catch-all" provisions for non-bodily injury claims which survive, and non-bodily injury claims which do not survive, respectively. *See Howard v. Aluminum Workers Local 400*, 589 F.2d 771, 774–75 (4th Cir. 1978) (Widener, J., concurring).

It is noteworthy in view of the court's discussion in Parts IV and V, *infra*, that Judge Widener cites Professors Wright, Miller and Cooper as stating the correct rule regarding the application of state limitations periods in federal court.

"The rule I think is correctly stated by Wright, Miller and Cooper, *Federal Practice and Procedure*, Vol. 13, p. 497 as follows: 'Congress has not provided any statute of limitations for actions under Section 1983. Thus, the applicable period of limitations is that the state itself would enforce *if an action seeking similar relief were brought in a court of the state.'*"

582 F.2d at 1320 (Widener, J., dissenting) (emphasis supplied).

knowledging that "[b]oth § 1981 and § 1982 were enacted to redress infringements of closely related civil rights." *Patterson v. American Tobacco Co.*, 535 F.2d 257, 275 (4th Cir.) (Butzner, J.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976). *See Williams v. Norfolk and Western Ry.*, 530 F.2d 539, 541 (4th Cir. 1975), applying, without discussion, Virginia's two-year limitation period.

Of special significance to the present inquiry is the court's decision in *Johnson v. Davis*, 582 F.2d 1316 (4th Cir. 1978), refusing to apply the statute of limitations enacted by the Virginia General Assembly following *Almond*[10] to actions under section 1983.[11] Writing for the court, Judge Hall stated:

"In *Almond*, we grouped § 1983 actions with personal injury actions because we reasoned that whether the theory of recovery was based upon wrongful injury to the person or upon violation of a constitutional right not to be so injured by a person acting under color of state law, the determination of which limitation period would apply should not turn on archaic concepts of survivability of the common law or on the form of the action brought but should instead turn on the primary object of the litigation which is compensation for injury suffered by the person. It is well-established in Virginia law that the object of the litigation rather than the theory of recovery determines which limitation period applies. *Friedman v. Peoples Service Drug Stores*, 208 Va. 700, 160 S.E.2d 563 (1968)."

582 F.2d at 1318.

Although reference is made in *Davis* to Virginia law, it is apparent from *Almond* that the characterization of section 1983

actions as personal injuries is a matter of federal law, the "right of recovery depend[ing] on federal considerations, ... [not] archaic concepts of the survivability of the common law." 459 F.2d at 204. Judge Merhige highlighted this concept in connection with claims under sections 1981, 1982 and 1985.

"[D]efendants [allegedly] deprived plaintiff of his property because he was black. This is basically a tort, a personal injury issue requiring the two-year statute of limitations under § 8–24 of the Virginia Code. Sections 1981–1986 are concerned with state contractual or property rights only so far as they are involved with constitutional rights. Discrimination and deprivation of constitutional rights are the key focus of the civil rights laws and those actions are basically tortious in nature. This 'constitutional tort' theory underlies the rationale of *Almond v. Kent*, 459 F.2d 200 (4th Cir. 1972), and every other civil rights case in Virginia, all of which have applied a two-year statute of limitations."

*Harris v. Obenshain*, 452 F.Supp. 1172, 1177 (E.D.Va.1978).

Further, the court in *Davis* reiterated its position regarding the fundamental differences between constitutional deprivations and state tort actions.

"As a matter of evaluating the protection of remedies for wrongs which in some instances may constitute both state torts and deprivations of constitutional rights, we [ . . . ] reasoned in *Almond* that violations of federally protected constitutional rights are more serious than violations of state protected private rights and therefore were deserving of at least the two-year step in the Virginia scale of

---

**10.** *See Almond v. Kent*, 459 F.2d at 203 n.10, recommending state enactment of a statute of limitations applicable to federal civil rights actions.

**11.** Notwithstanding that the Virginia special provision applied only to § 1983 actions, *see Edgerton v. Puckett*, 391 F.Supp. 463, 466 n.3 (W.D.Va.1975), judges of the District of Virginia reached the same conclusion regarding § 1983 and the other Reconstruction Civil

Rights Acts as did the Fourth Circuit in *Davis*. *See, e.g., Brown v. Blake & Bane, Inc.*, 409 F.Supp. 1246 (E.D.Va.1976) (§§ 1982, 1983); *Bulls v. Holmes*, 403 F.Supp. 475, 478 (E.D.Va. 1975) (§§ 1981, 1983); *Van Horn v. Lukhard*, 392 F.Supp. 384 (E.D.Va.1975) (§ 1983) (cited with approval in *Johnson v. Davis*); *Edgerton v. Puckett, supra* this note, (§ 1983); *Taliaferro v. State Council of Higher Education*, 372 F.Supp. 1378 (E.D.Va.1974) (§§ 1983, 1985).

values apparent in its statutes of limitations."

"Furthermore, we decline to adopt this special limitation period on § 1983 actions for some of the reasons set forth in two district court opinions which have not been reviewed by this court. In *Edgerton v. Puckett*, 391 F.Supp. 463 (D.C. 1975), Judge Turk refused to apply this special limitation period because to do so would be to undervalue the constitutional values at stake in § 1983 actions without rationally prescribing a limitation period for those actions in light of the object of the litigation as required by Virginia law. In *Van Horn v. Lukhard*, 392 F.Supp. 384 (D.C.1975), Judge Merhige refused to adopt this one-year limitation period because to do so would be to impose an unreasonably discriminatory limitation period on the assertion of important federally protected rights.

"In the *Van Horn* opinion, Judge Merhige categorized § 1983 actions as 'constitutional tort remedies' which were intended to be available where state tort remedies, although available in theory, were not available in practice. It was noted that the Supreme Court has emphasized again and again that the Reconstruction Era civil rights statutes must be accorded a 'sweep as broad as [their language].' *U. S. v. Price*, 383 U.S. 787, 801, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966), and therefore assertion of the 'constitutional tort remedy,' which was created to protect such paramount federal rights as the right to vote, the right of free speech, and the right to be free from invidious discrimination, should not be relegated in the Virginia scheme of limitation periods to a period of only one year. Judge Merhige concluded that this special limitation period unreasonably discriminated against the 'constitutional tort remedy' because all other personal injury actions in Virginia are limited by a two-year period.

"Even if we were to accept the statutory direction of the General Assembly that § 1983 actions should not be grouped or valued along with Virginia causes of ac-tion, as a matter of judicial policy we cannot do so because there is no rational basis for distinguishing between § 1983 actions and actions for injury to the person in light of the purposes for which statutes of limitations are generally prescribed. These statutes are statutes of repose whose intent is to secure the prompt enforcement of claims during the lives of witnesses and when their recollection may be presumed to be still unimpaired. *Campbell v. Haverhill*, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895). The facts to be proven, the witnesses to be called to testify, the evidence to be considered are generally the same for § 1983 actions as for state actions brought to compensate for the personal injury underlying the deprivation of federal constitutional rights."

582 F.2d at 1318–19.

In another context, the court rejected the six-month limitations period applicable to suits under Title VIII of the Fair Housing Act, 42 U.S.C. § 3604 *et seq.*, to actions for racial discrimination in housing brought under 42 U.S.C. § 1982. *Hickman v. Fincher*, 483 F.2d 855 (4th Cir. 1973). Judge Winter commented, "recent cases revitalizing the long dormant § 1982 make it clear that the broad effect of that and similar early civil rights statutes was not meant to be circumscribed by modern civil rights acts." 483 F.2d at 856. *Cf. Warner v. Perrino*, 585 F.2d 171, 173–75 (6th Cir. 1978) (applying 180 day state fair housing law period for filing action in state court); *Green v. Ten Eyck*, 572 F.2d 1233, 1237–38 (8th Cir. 1978) (same).

Analogizing to the relationship between section 1981 and Title VII, the court cited decisions holding that the running of the statute of limitations under Title VII was no bar to an action under § 1981, and stated:

"The legislative history of the Equal Employment Opportunity Act of 1972, P.L. 92–261, which amended portions of Title VII of the 1964 Act, reinforces the view that the recent civil rights acts do not affect existing rights granted by pre-

vious legislation. *See* H.R. Report No. 92–238, 1972 U.S. Code Cong. & Ad. News, 92d Cong., 2d Sess., p. 2154 (1971); 118 Cong.Rec.S. 1458–1459, 1523, 1526, 1791–1797 (Daily ed. Feb. 8, 9 and 15, 1972)."

483 F.2d at 857.

The Fourth Circuit has had few occasions to consider the limitations period applicable to civil rights actions in Maryland. Nevertheless, the development of the law in this district has been similar to that in the Fourth Circuit. Judge Kaufman (now Chief Judge) applied to actions under § 1983 the limitations period applicable to claims under Article 23 of the Maryland Declaration of Rights.[12] *See McIver v. Russell*, 264 F.Supp. 22 (D.Md.1967). *See also Harper v. Mayor and City Council of Baltimore*, 359 F.Supp. 1187, 1195 n.12 (D.Md.) (Young, J.), *modified on other grounds sub. nom. Harper v. Kloster*, 486 F.2d 1134 (4th Cir. 1973). Noting that Article 23 had been interpreted by Maryland courts as protecting the same rights guaranteed by the Fourteenth Amendment of the Federal Constitution, and that section 1983 was enacted to enforce the Fourteenth Amendment, Judge Kaufman concluded that it was appropriate to adopt the limitations period applicable to Article 23 actions. 264 F.Supp. at 32. In so doing, the court rejected a "splitting approach," applying one statute of limitations to the count sounding in assault and battery and another to the count sounding in false imprisonment or malicious prosecution.[13]

Again looking to the similarity of rights protected by Article 23 and the Thirteenth Amendment, Judge Kaufman applied the period of limitations applicable to Article 23 to section 1985 actions. *Hall v. Asher*, 355 F.Supp. 808, 811 n.6 (D.Md.1973). Judge Blair of this court also relied, apparently, on

*Hall* in applying Maryland's three-year limitation to section 1985. *See Parish v. Maryland & Virginia Milk Producers Ass'n*, 437 F.Supp. 623, 627 (D.Md.1977).

Finally, the undersigned judge, citing note 6 of *Hall* regarding the common basis of sections 1985 and 1981, and Judge Blair, citing Fourth Circuit precedent construing the applicable Virginia statute of limitations, both applied Maryland's three-year statute of limitations to cases concerning racial discrimination in employment brought pursuant to section 1981. *Linder v. Litton Systems, Inc.*, 81 F.R.D. 14, 17 (D.Md.1978) (Blair, J.); *Lewis v. Bethlehem Steel Corp.*, 440 F.Supp. 949, 953 (D.Md. 1977) (Miller, J.).

The Fourth Circuit has once cited the three-year statute of limitations in *Md. Cts. & Jud. Proc. Code Ann.* § 5–101 (1980 Repl. Vol.) as the limitations period applicable to employment discrimination suits under section 1981. *See International Woodworkers, Local 5346 v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1271 (4th Cir. 1981). The court did so, however, before the publication of Judge Young's decision in *McGill*.

In *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court reiterated the constitutional foundations of a claim premised on section 1981, distinguishing such a claim from that brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* 421 U.S. at 457–61, 95 S.Ct. at 1718–1720. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47–48 & n.9, 94 S.Ct. 1011, 1019 & n.9, 39 L.Ed.2d 147 (1974).

The Supreme Court has often noted that the operative language of section 1981, like that of section 1982, is derived from section 1 of the Civil Rights Act of 1866, 14 Stat. 27, an exercise of congressional power un-

**12.** The "Due Process" provision of the Maryland Declaration of Rights has recently been recodified as *Md.Const.Code Ann.* art. 24 (1981 Rep.Vol.).

**13.** *See* note 18 *infra*. After *McIver*, the Maryland General Assembly repealed the statute of limitations applicable specifically to actions for

violation of Article 23 and replaced it with the current provisions, *Md. Cts. & Jud.Proc.Code Ann.* §§ 5–101, 5–102 (1980 Repl. Vol.). The statutory revision did not change the limitations period applicable to § 1983 actions in Maryland. *Davidson v. Koerber*, 454 F.Supp. 1256 (D.C.Md.1978).

der the Thirteenth Amendment. *E.g., Civil Rights Cases*, 109 U.S. 3, 22, 3 S.Ct. 18, 29, 27 L.Ed. 835 (1883); *United States v. Harris*, 106 U.S. 629, 640, 1 S.Ct. 601, 610, 27 L.Ed. 290 (1883). Consequently, while section 1 of the Civil Rights Act of 1866 was subsequently reenacted through the Act of 1870, 16 Stat. 144, an exercise of congressional power under the Fourteenth Amendment, the Court has consistently held that section 1981 reaches private acts of racial discrimination and that there is no state action requirement under that Act. *See, e.g., Runyon v. McCrary*, 427 U.S. 160, 168–72 & n.8, 96 S.Ct. 2586, 2593–2595 & n.8, 49 L.Ed.2d 415 (1976); *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 439–40 & n.10, 93 S.Ct. 1090, 1094–1095 n.10, 35 L.Ed.2d 403 (1973); *Hurd v. Hodge*, 334 U.S. 24, 30–32 & nn. 7 & 11, 68 S.Ct. 847, 850–851 & nn. 7 & 11, 92 L.Ed. 1187 (1948). *See also Jones v. Alfred H. Mayer & Co.*, 392 U.S. 409, 437–44 & n.78, 88 S.Ct. 2186, 2202–2205 & n.78, 20 L.Ed.2d 1189 (1968); *Georgia v. Rachel*, 384 U.S. 780, 790–91, 86 S.Ct. 1783, 1789, 16 L.Ed.2d 925 (1966).

It is apparent, therefore, that the rights protected by section 1981 are based on the fundamental constitutional principles set out in section 1 of the Thirteenth Amendment. The Enabling Clause of that amendment, section 2, "clothed 'Congress with power to pass *all laws necessary and proper for abolishing all badges and incidents of slavery in the United States.'*" *Jones v. Alfred H. Mayer & Co.*, 392 U.S. at 439, 88 S.Ct. at 2203 (emphasis supplied by the Court), *quoting Civil Rights Cases*, 109 U.S. at 20, 3 S.Ct. at 27. As an exercise of congressional power under section 2 of the Thirteenth Amendment, section 1981 is especially broad in scope and remedial in nature, serving as it does to eradicate "badges and incidents of slavery." When the Court

in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. at 459–60, 95 S.Ct. at 1719–1720, expressly applied section 1981 to racial discrimination in private employment, such appears to have been a logical application of the statute's function.[14] Nowhere in that case does the Court purport to constrict or alter the constitutional nature of the rights protected by section 1981. To the contrary, by distinguishing section 1981 from Title VII the Court highlighted the differing policy considerations applicable to such statutory claims.

In short, the broad nature of the constitutional right protected by § 1981 far exceeds, and is distinct from, the state administrative rights created under the Maryland Commission on Human Relations Act, *Md. Code Ann.*, Art. 49B, § 1 *et seq.* (1979 Rep. Vol.).

## IV.

Well-reasoned cases which have dealt with the "borrowing" concept in connection with periods of limitations for federal *judicial* purposes have uniformly limited the choice of alternatives to those periods of limitations relating to state *judicial* actions.

In applying to section 1981 the principle that federal courts will borrow state periods of limitations when Congress has created a federal right without prescribing a time for enforcement, the Supreme Court in *Johnson* examined and relied on cases which examined limitations for the filing of claims in a state court. 421 U.S. at 462–67, 95 S.Ct. at 1721–1723. *See O'Sullivan v. Felix*, 233 U.S. 318, 322–25, 34 S.Ct. 596, 597–599, 58 L.Ed. 980 (1914); 42 U.S.C. § 1988.[15]

It is also significant that the borrowed state limitations period at issue in *Johnson* concerned the time for filing a civil action in state court. 421 U.S. at 456 n.2, 95 S.Ct. at 1718 n.2; *see id.* at 462 n.7, 95 S.Ct. at

---

**14.** The Fourth Circuit had previously so applied section 1981. *Brown v. Gaston County Dyeing Machine Co.*, 457 F.2d 1377 (4th Cir.), *cert. denied*, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972). *See also Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979, 993–94 (D.C.Cir.1973) (Wright, J.).

**15.** *Cf. Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (tolling rules in action under § 1983 determined by reference to state law); *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (survival of claim asserted under § 1983 determined by reference to state law).

1721 n.7. Further, not only did the cases cited by the majority concern state limitations on bringing suit on analogous causes of action in state court,[16] but as Justice Marshall noted in his separate opinion, "[t]he applicable period of limitations is derived from that which the State would apply *if the action had been brought in a state court.*" 421 U.S. at 469, 95 S.Ct. at 1724 (Marshall, J., concurring in part and dissenting in part) (emphasis supplied.)[17]

The Court's most recent pronouncement on the state borrowing concept, *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), does not depart from prior cases in this regard. The Court there held that the most appropriate state limitations period, as to that plaintiff's duty of fair representation suit, was New York's 90-day period for actions to vacate arbitration awards. Section 7511(a) CPLR (McKinney). What is significant about *Mitchell*, in the present context, is that the state period of limitations held applicable by the Court was one to commence a proceeding in state court. Section 7510, CPLR (McKinney).

### V.

In determining to apply the six-month limitations period set out in *Md.Code Ann.*

art 49B, § 9(a) for state administrative claims to employment discrimination suits under section 1981, the court in *McGill* analyzed neither Supreme Court cases nor cases in this Circuit addressing specifically section 1981, or the other civil rights statutes. Instead, the court purported to apply the borrowing analysis of a securities law case, *O'Hara v. Kovens*, 625 F.2d 15 (4th Cir. 1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981), to the civil rights context. In addition, the court in *McGill* cited *Burns v. Sullivan*, 619 F.2d 99 (1st Cir.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980), which applied a similar state administrative limitations period to a suit by public employees under section 1983,[18] as authority for the proposition that a six-month limitations period "does not conflict with any federal policy, since it provides for precisely the time permitted under Title VII." 524 F.Supp. at 1128.[19]

In *O'Hara*, the court held that the one-year limitations period of Maryland's blue sky law, *Md.Corp. & Ass'ns Code Ann.* § 11–703(f) (1981 Cum.Supp.), rather than the three-year limitations period of *Md.Cts. & Jud.Proc.Code Ann.* § 5–101, was applica-

---

**16.** *E.g., Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–07, 86 S.Ct. 1107, 1111–1114, 16 L.Ed.2d 192 (1966) (§ 301 claim; six-year limitations period for contracts not in writing).

**17.** *See Swan v. Board of Higher Education*, 319 F.2d 56, 59 (2d Cir. 1963) (Marshall, J.); *Smith v. Cremins*, 308 F.2d 187, 189–90 (9th Cir. 1962). *See also Burkey v. Marshall County Board of Education*, 513 F.Supp. 1084, 1089 (N.D.W.Va.1981).

**18.** This court has previously declined to follow *Burns* in connection with a First Amendment claim asserted in the employment context under § 1983. *Hall v. Board of Commissioners*, 509 F.Supp. 841, 847–848 (D.Md.1981). To the extent that the reasoning in *Burns* cannot be distinguished from that applied in *McGill, see Ware v. Colonial Provision Co., Inc.*, 458 F.Supp. 1193 (D.Mass.1978), this court rejects the position staked out by the First Circuit. *Cf. Pauk v. Board of Trustees*, 654 F.2d 856, 861–63 (2d Cir. 1981) (noting, in § 1983 context, that it is inappropriate to apply different limitations period to different classes of defendants);

*Duggan v. Town of Ocean City*, 516 F.Supp. 1081, 1083 (D.Md.1981) (Jones, J.) (rejecting argument that limitations period for § 1983 should vary with the particular factual allegations of the complaint). *But see Allen v. Fidelity & Deposit Co. of Md.*, 515 F.Supp. 1185, 1188 (D.S.C.1981).

**19.** Title VII's limitations period, as well as its other requirements, are plainly inapplicable to a suit under § 1981. *E.g., Johnson v. Railway Express Agency, Inc.*, 421 U.S. at 461, 95 S.Ct. at 1720; *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 349 (10th Cir. 1975). It is somewhat illogical, therefore, that a state fair employment law, which essentially mirrors Title VII, should be considered the most "analogous" state period of limitations. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. at 471–72, 95 S.Ct. at 1725–1726 (Marshall, J., concurring in part and dissenting in part); *Caldwell v. National Brewing Co.*, 443 F.2d 1044, 1046 (5th Cir. 1971); *Young v. International Tel. & Tel. Co.*, 438 F.2d 757, 763–64 (3d Cir. 1971).

ble to a claim under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Writing for the court, then Chief Judge Haynsworth reasoned as follows:

"When borrowing a state statute of limitations for federal purposes, a court should look to the statute which most clearly addresses the same or similar policy considerations as are addressed by the federal right being asserted. It is not necessary that the state statute operate in the same fashion as the federal scheme, nor is it necessary that the state statute describe a cause of action identical to the federal cause at issue. *Morris v. Stifel, Nicolaus & Co., Inc., supra,* 600 F.2d [139] at 142–146; *Dupuy v. Dupuy, supra,* 551 F.2d [1005] at 1023–24 n.31. *There simply must be a commonality of purpose between the federal right and the state statutory scheme so that it is reasonable to subject the federal implied right to the statute of limitations provided by state law.* By comparison, the shared purposes between § 10(b) and common law fraud are generalized at best. In *Fox v. Kane-Miller Corp.,* 542 F.2d 915, 918 (4th Cir. 1976), we held that the statute of limitations found in Maryland's blue sky law, *Md.Corp. & Ass'ns Code Ann.* § 11–703(f), would be applicable to implied actions arising under § 10(b). We see no reason to stray from that holding."

625 F.2d at 18 (footnote omitted) (emphasis supplied).

*O'Hara* 's rationale for applying Maryland's blue sky law to a claim under section 10(b) is consistent both with the reasoning of the Supreme Court's decisions regarding borrowing state limitations periods, and with prior Fourth Circuit decisions addressing specifically section 1981 and section 1983. The federal rights protected by section 10(b), and accompanying Rule 10b–5, 17 C.F.R. § 240.10b–5 (1981), are nearly identical to those set out in Maryland's blue sky law. *Md.Corp. & Ass'ns Code Ann.* §§ 11–301, 11–703. *See Morris v. Stifel, Nicolaus & Co., Inc.,* 600 F.2d 139, 142–46 (8th Cir. 1970). Further, the limitations period of Maryland's blue sky law applies to an action brought in state *court. Md.Corp. & Ass'ns Code Ann.* § 11–703.

The *McGill* court held there to be a sufficient commonality of purpose between section 1981 and Maryland's fair employment law because "both 'promote the same policy' of discouraging discrimination in the workplace." 524 F.Supp. at 1128. While this may be true as a general proposition, no mention was made in *McGill* of the broader, constitutionally based nature of the rights protected by section 1981. Further, *McGill* did not address the qualitative practical and policy differences between an administrative scheme premised on investigation and conciliation and a *de novo* civil action brought in a court of law.

In contrast with the position adopted in *McGill,* considerable well-reasoned authority has soundly rejected the proposition that section 1981 shares a sufficient commonality of purpose with a state, administrative fair employment law to require a federal plaintiff to file a section 1981 claim within the time set by a state for the filing of an administrative charge with a state fair employment agency. *See, e.g., Zuniga v. AMFAC Foods, Inc.,* 580 F.2d 380, 384 n.5 (10th Cir. 1978); *Chambers v. Omaha Public School District,* 536 F.2d 222, 226 (8th Cir. 1976); *Mason v. Owens-Illinois, Inc.,* 517 F.2d 520, 521–22 (6th Cir. 1975); *Waters v. Wisconsin Steel Works,* 427 F.2d 476, 488 (7th Cir.), *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); *De Malherbe v. International Union of Elevator Constructors,* 449 F.Supp. 1335, 1346–47 (N.D.Cal. 1978); *Jones v. United Gas Improvement Corp.,* 383 F.Supp. 420, 429–30 (E.D.Pa. 1974); *Smith v. Perkin-Elmer Corp.,* 373 F.Supp. 930, 936 (D.Conn.1973). *Cf. Garner v. Stephens,* 460 F.2d 1144, 1147–48 (6th Cir. 1972) (rejecting application of state fair employment limitations period to claim under section 1983). *See also Shouse v. Pierce County,* 559 F.2d 1142, 1146–47 (9th Cir. 1977).

Several common factors were present in the above-cited cases, leading the courts to conclude that the policy considerations be-

hind a limitations period for a state administrative remedy are fundamentally different from those applicable "to suits by private litigants in courts of law." *Waters v. Wisconsin Steel Works*, 427 F.2d at 488.

First, the focus of the state administrative proceeding, like that under Title VII, is the investigation and conciliation of employment related disputes.[20] In contrast, private civil litigation, such as that under section 1981, is adversarial in nature. Second, the course and scope of the administrative proceeding is controlled largely by employees of the agency, rather than by the party seeking relief.[21]

Third, the relief available under the state fair employment law is more limited than that available to the private plaintiff in a suit under section 1981.[22] *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. at 459–60, 95 S.Ct. at 1719–1720. Fourth, an administrative claimant must await the final decision or order of the agency before bringing suit in a court,[23] and judicial review is not, unlike in a suit under section 1981, *de novo*.[24] *See Smith v. Perkin-Elmer Corp.*, 373 F.Supp. at 936.

Finally, as Judge Engel observed for the Sixth Circuit, such a statute "by its terms does not apply to actions commenced in courts." *Mason v. Owens-Illinois, Inc.*; 517 F.2d at 522, *quoting Garner v. Stephens*, 460 F.2d at 1148.

### VI.

Section 1981 was enacted by Congress to aid in the eradication of race discrimination for the benefit of all persons "within the jurisdiction of the United States." *McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 285–96, 96 S.Ct. 2574, 2581–2586, 49 L.Ed.2d 493 (1976). The considerations discussed in part V above, as well as those set out in parts III and IV,

*supra*, persuade the court that it is inappropriate to subject the rights protected by section 1981 to the limitations period for filing an administrative charge with Maryland's fair employment agency.

In enacting section 5–101 of *Md.Cts. & Jud.Proc.Code Ann.*, the Maryland legislature made a reasoned judgment that, except for special types of claims governed by their own statute of limitations, a civil action to enforce a personal right "shall be filed within three years of the date it accrues." The rights protected by section 1981 are certainly as valuable as those granted by state contract and tort law. Consequently, in the absence of some other legislatively mandated period for the filing of a civil rights suit in a court of law, the court holds that Maryland's three-year limitations period is the most appropriate period for application to federal constitutional claims asserted through section 1981.

For the reasons set out herein, an order has heretofore been entered in this case denying the limitations defense.

---

**20.** *Md.Code Ann.* art. 49B, § 10(a) & (b).

**21.** *Md.Code Ann.* art. 49B, §§ 4, 9(b), 10, 11(a)–(d) & (g).

**22.** *Md.Code Ann.* art. 49B, § 11(c).

**23.** *Md.Code Ann.* art. 49B, § 12. *E.g., Soley v. Maryland Comm'n on Human Relations*, 277 Md. 521, 525–28, 356 A.2d 254 (1976). *Accord,*

*Maryland Department of Human Resources v. Wilson*, 286 Md. 639, 644–45, 409 A.2d 713 (1979).

**24.** *Md.Code Ann.* art. 49B, § 12(a). *See Md. Code Ann.* art. 41, §§ 255–56 (1981 Cum.Supp.) (Maryland Administrative Procedure Act).