Anton BERK

v.

**MARYLAND PUBLICK BANKS, INC., et al.**

**No. L–98–740.**

United States District Court, D. Maryland.

June 5, 1998.

Stephen R. Leventhal, David A. Slacter, Bethesda, MD, for Plaintiff.

David C. Barclay, Christopher J. Young, Simcox and Barclay, Annapolis, MD, for Defendants.

## *MEMORANDUM*

LEGG, District Judge.

Before the Court is the defendants' Motion to Dismiss, filed on April 14, 1998 (Docket No. 4). On March 11, 1998, the plaintiff, Anton Berk ("Berk") filed a complaint alleging securities fraud by the defendants, Maryland Publick Banks, Inc. (the "Corporation") and its Vice–President and Chief Executive Officer, John W. Marhefka, Jr. ("Marhefka") in violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and parallel provisions of Maryland

law, Md.Code Ann., Corps. & Ass'ns § 11–301.[1]

Prior to March, 1997, Berk owned shares in the Corporation, which was privately owned. Berk alleges that in March, 1997, Berk questioned Marhefka, and Marhefka informed him that the Corporation had no plans to go public. Berk alleges that, based on Marhefka's representations, on or about April 1, 1997, Berk made a gift of his shares in the Corporation to the Anton J. Berk Irrevocable Trust (the "Trust"), a trust established for the benefit of Berk's wife and children.

■ Berk claims that, at the time he made the gift, Berk believed his shares to be worth about $20,000. On September 19, 1997, however, the Corporation completed an initial public offering ("IPO"), allegedly causing Berk's shares to be valued at approximately $180,000. Berk claims that, but for Marhefka's misrepresentations concerning the Corporation's plans to go public, Berk would not have executed the gift to the Trust. Berk seeks to recover $160,000, the difference between $20,000, the value Berk supposed the shares to have based on Marhefka's representations, and $180,000, the value attained by Berk's shares as a result of the Corporation's IPO.

■ The defendants have moved to dismiss Berk's complaint based exclusively on the contention that Berk lacks standing to sue, because Berk's gift of the shares was not a "purchase or sale" of securities for purposes of Section 10(b).[2] It is well established that the protections of Section 10(b), and of Rule 10b–5 thereunder, can benefit only a "purchaser or seller" of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir.1952). In determining which parties qualify as "purchasers or sellers," however, the Court must read the statute "flexibly, not technically and restrictively." *Supt. of Insurance v. Bankers Life and Cas. Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

There is no precedent on the precise question whether a donor qualifies for protection under Section 10(b). The Court must determine whether the withholding of information pertinent to Berk's making of the gift "is the type of fraudulent behavior which was meant to be forbidden by the statute." *SEC v. National Securities, Inc.,* 393 U.S. 453, 467, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); *International Controls Corp. v. Vesco,* 490 F.2d 1334, 1345 (2nd Cir.), *cert. denied* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).

In *Vesco,* the plaintiff, International Controls Corp. (ICC), was induced into spinning off one of its subsidiaries by the misrepresentations of the defendant, Robert L. Vesco, who greatly undervalued the subsidiary. Although the spin-off took the form of a stock dividend to ICC's shareholders, and involved no consideration in exchange for the dividend, the court held that ICC should be deemed a "seller" for purposes of Section 10(b). 490 F.2d at 1345. Relying on *Banker's Life, supra,* the court emphasized that

" § 10(b) was intended by Congress to protect investors ... from deceptive devices which would inhibit informed deci-

1. Berk's Opposition to the defendants' Motion to Dismiss addresses only federal law. For purposes of the Motion to Dismiss, the Court shall consider federal securities provisions and Maryland blue sky laws *pari passu. See Evans v. C & P Tel. Co.,* 535 F.Supp. 499 (D.Md.1982).

2. Section 10(b) provides, in pertinent part, that "It shall be unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance ..." The regulations enacted under the 1934 Act further provide that "It shall be unlawful for any person, directly or indirectly, by the use of any means or instru-

mentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."
17 C.F.R. § 240–10b–5 (1998).

sion-making in the course of securities transactions ... Nor do we believe ... that because ICC's shareholders were not required to part with consideration in return for the [subsidiary's stock], the transaction was beyond the purview of § 10(b) ... [T]he statute was intended to safeguard not only the shareholders of the defrauded corporation, but its creditors as well." *Id.* at 1345–46.

The Court is reluctant, at this early stage in the litigation and without the benefit of further discovery, to fashion a rule that a donation such as Berk's could never be a "sale" for purposes of Section 10(b). In light of the principles outlined in *Vesco*, Marhefka's misrepresentations could be of the kind Section 10(b) was designed to prevent. Taking the complaint at face value, the misrepresentations induced Berk into parting with his stock, and impaired Berk's ability to reach an informed judgment on the value of the stock transaction.

The misrepresentations caused Berk to give away substantially more than he intended. In addition, Berk's inability to reach an informed decision has harmed not only Berk himself, but Berk's creditors as well.[3] Under such circumstances, the fact that no consideration was given Berk in return for the Corporation's stock is immaterial to the determination at issue.[4]

Accordingly the Court, by separate Order, shall deny the defendants' Motion to Dismiss.

---

[3]. Berk's counsel has represented to the Court that Berk has "substantial creditors." Opposition at 7.

[4]. The cases cited by the defendant, *Childers v. Northwest Airlines, Inc.*, 688 F.Supp. 1357 (D.Minn.1988), and *Rose v. Arkansas Valley Env. & Utility Authority*, 562 F.Supp. 1180 (W.D.Mo. 1983), are inapposite because they involve donee, rather than donor, plaintiffs. The absence of consideration is not fatal to a donor's cause of action under Section 10(b), because a donor's belief as to the value of the underlying securities is material to the donor's decision to effect the transaction. By contrast, under ordinary circumstances a donee's opinion of the securities' value does not influence whether or not the transaction will occur. The absence of consideration is thus fatal to a donee's Section 10(b) claim.

Another case cited by the defendants, *Shaw v. Dreyfus*, 172 F.2d 140 (2nd Cir.1949), is similarly inapposite, because it involves Section 16(b) of the 1934 Act, which was intended to curb improper profits from "insider trading," and not misrepresentations by corporate officers to shareholders.